## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

NATIONAL ALLIANCE TO END
HOMELESSNESS, et. al,

                       *Plaintiffs*,

*v.*

SCOTT TURNER, *et al.*,

                       *Defendants*.

Case No. 25-447

## MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' <u>MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES.........................................................................................iii

INTRODUCTION.........................................................................................................1

BACKGROUND...........................................................................................................2

PROCEDURAL HISTORY...........................................................................................5

STANDARD OF REVIEW...........................................................................................6

ARGUMENT................................................................................................................6

I.    Plaintiffs' Claims Are Precluded Because They Seek To Challenge Decisions
      Quintessentially "Committed To Agency Discretion By Law" ...............................6

II.   Defendants Acted Lawfully Under the APA ...........................................................7

      A.    Defendants have acted within their statutory authority and consistent with
            the law.........................................................................................................7

      B.    HUD's determination to add the challenged criteria was reasonable and not
            arbitrary or capricious ...............................................................................11

      C.    Constitutional Claims.................................................................................14

      D.    The "Sex Binary Criterion" .......................................................................15

      E.    Secretary Turner validly exercised his authority to waive the 30-day notice
            and application period.................................................................................15

      F.    No agency action was unlawfully withheld or unreasonably delayed.................16

II.   Plaintiffs' Constitutional Claims are Either Foreclosed or Unavailing....................17

      1.    Separation of Powers...................................................................................18

            a.    Spending Clause    .........................................................................18

            b.    Presentment Clause.........................................................................19

            c.    Take Care Clause............................................................................20

      2.    Tenth Amendment .......................................................................................21

i

       3.      First Amendment and the Sex Binary Criteria ................................................... 22

**III.**    **Plaintiff's Ultra Vires Claims are Foreclosed** ............................................................ 22

**IV.**    **Any Remedies Should Be Narrowly Tailored** ........................................................ 23

       1.      Under the APA, the appropriate remedy is limited to the agency action giving rise to the suit rather than a forward-looking injunction ........................................... 23

       2.      The Court may sever any conditions deemed improper and preserve the remainder of the NOFO ............................................................................................................ 27

**CONCLUSION** ............................................................................................................................ 27

## TABLE OF AUTHORITIES

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013) ................................................................................................. 15

*Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.*,
   Civ. A. No. 25-298 (RDM), 2025 WL 1852762 (D.D.C. July 6, 2025) ................................. 19

*Ashwander v. Tenn. Valley Auth.*,
   297 U.S. 288 (1936) ................................................................................................. 26

*Atieh v. Riordan*,
   797 F.3d 135 (1st Cir. 2015) ..................................................................................... 11

*Baker v. Carr*,
   369 U.S. 186 (1962) ................................................................................................. 20

*Bennett v. Donovan*,
   703 F.3d 582 (D.C. Cir. 2013) ................................................................................... 24

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ................................................................................................. 23

*Chi. & S. Air Lines v. Waterman S. S. Corp.*,
   333 U.S. 103 (1948) ................................................................................................. 20

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ................................................................................................... 6

*City of Grants Pass v. Johnson*,
   603 U.S. 520 (2024) ................................................................................................. 12

*Clinton v. City of New York*,
   524 U.S. 417 (1998) ................................................................................................. 19

*Clinton v. Jones*,
   520 U.S. 681 (1997) ................................................................................................. 21

*Cnty. of L.A. v. Shalala*,
   192 F.3d 1004 (D.C. Cir. 1999) ................................................................................. 24

*Cnty. of Santa Clara v. Trump*,
   250 F. Supp. 3d 497 (N.D. Cal. 2017) ....................................................................... 18

*Dalton v. Specter*,
    511 U.S. 462 (1994)..................................................................................17, 18, 19, 20

*DHS v. Regents of Univ. of Cal.*,
    591 U.S. 1 (2020) .................................................................................................6, 14

*Env't Def. Ctr. v. EPA*,
    344 F.3d 832 (9th Cir. 2003)....................................................................................22

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)...................................................................................................14

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021)...................................................................................................11

*Fed. Express Corp. v. U.S. Dep't of Com.*,
    39 F.4th 756 (D.C. Cir. 2022)...................................................................................23

*FERC v. Mississippi*,
    456 U.S. 742 (1982)...................................................................................................22

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010)...................................................................................................21

*Global Health Council v. Trump*,
    153 F.4th 1 (D.C. Cir. 2025)......................................................................................18

*Goodluck v. Biden*,
    104 F.4th 920 (D.C. Cir. 2024) *reh'g en banc denied*, No. 21-5263,
    2024 WL 4092894 (D.C. Cir. Sep. 3, 2024)...........................................................26

*Harmon v. Brucker*,
    355 U.S. 579 (1958)...................................................................................................26

*K Mart Corp. v. Cartier, Inc.*,
    486 U.S. 281 (1988)...................................................................................................27

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)................................................................................................6, 7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...................................................................................................20

*Maine Med. Ctr. v. Burwell*,
    841 F.3d 10 (1st Cir. 2016)........................................................................................24

*Make the Road N.Y.* v. *Pompeo*,
   475 F. Supp. 3d 232 (S.D.N.Y. 2020) ............................................................. 16

*Marbury v. Madison*,
   5 U.S. (1 Cranch) 137 (1803) ......................................................................... 20

*Maryland v. King*,
   567 U.S. 1301 (2012) ...................................................................................... 26

*Minuteman Health, Inc. v. U.S. Dep't of Health & Human Servs.*,
   291 F. Supp. 3d 174 (D. Mass. 2018) ............................................................... 6

*Mississippi v. Johnson*,
   71 U.S. (4 Wall.) 475 (1866) ..................................................................... 20, 21

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ........................................................................................ 25

*Morrison v. Olson*,
   487 U.S. 654 (1988) ........................................................................................ 21

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*,
   894 F.3d 95 (2d Cir. 2018) ............................................................................. 16

*Nat'l Urb. League v. Trump*,
   783 F. Supp. 3d 61 (D.D.C. 2025) .................................................................. 22

*New Life Evangelistic Ctr., Inc. v. Sebelius*,
   753 F. Supp. 2d 103 (D.D.C. 2010) ................................................................ 13

*New York v. Trump*,
   133 F.4th 51 (1st Cir. 2025) ........................................................................... 25

*New York v. Trump*,
   769 F. Supp. 3d 119 (D.R.I. 2025) .................................................................. 25

*New York v. United States*,
   505 U.S. 144 (1992) ........................................................................................ 21

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) .......................................................................................... 24

*Nuclear Regul. Comm'n v. Texas*,
   605 U.S. 665, (2025) ....................................................................................... 22

*Nyunt v. Chairman, Broad. Bd. of Governors,*
    589 F.3d 445 (D.C. Cir. 2009)........................................................................22

*Oestereich v. Selective Serv. Sys. Loc. Bd. No. 11, Cheyenne, Wyo.,*
    393 U.S. 233 (1968)....................................................................................23

*Palisades Gen. Hosp. Inc. v. Leavitt,*
    426 F.3d 400 (D.C. Cir. 2005)..............................................................23, 24

*Peregrine Myanmar Ltd. v. Segal,*
    89 F.3d 41 (2d. Cir. 1996)............................................................................25

*Printz v. United States,*
    521 U.S. 898 (1997)....................................................................................21

*R.I. Latino Arts v. Nat'l Endowment for the Arts,*
    Civ. A. No. 25-79 WES, 2025 WL 2689296 (D.R.I. Sep. 19, 2025). ...................6

*River St. Donuts, LLC v. Napolitano,*
    558 F.3d 111 (1st Cir. 2009)....................................................................6, 11

*Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,*
    102 F.3d 12 (1st Cir. 1996)..........................................................................26

*Sierra Club v. EPA,*
    353 F.3d 976 (D.C. Cir. 2004)......................................................................11

*State of New York v. U.S. Dep't of Just.,*
    1:25-cv-00345-MSM-PAS, 2025 WL 2618023 (D.R.I. Sep. 10, 2025)...............18

*Telecommunications Research and Action Center v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984)........................................................................17

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006)......................................................................23

*Trump v. CASA,*
    606 U.S. 831 (2025)....................................................................................23

*U.S. Term Limits, Inc. v. Thornton,*
    514 U.S. 779 (1995)....................................................................................21

*Wis. Gas Co. v. FERC,*
    758 F.2d 669 (D.C. Cir. 1985)......................................................................25

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 1 ................................................................. 18

U.S. Const. art. II, § 3 ....................................................................... 20

**Statutes**

5 U.S.C. § 701 ................................................................................... 6

5 U.S.C. § 706 ....................................................................... 6, 16, 24

8 U.S.C. § 1611 ................................................................................ 13

21 U.S.C. § 856 ............................................................................... 12

34 U.S.C. § 20911 ........................................................................... 11

34 U.S.C. § 20912 ..................................................................... 11, 12

34 U.S.C. § 20914 ........................................................................... 11

42 U.S.C. § 3545 ............................................................................. 15

42 U.S.C. § 11381 .............................................................................. 2

42 U.S.C. § 11382 ............................................................................. 8

42 U.S.C. § 11385 ........................................................................... 10

42 U.S.C. § 11386 ............................................................... 8, 9, 10, 19

42 U.S.C. § 11386a .................................................................... 1, 7, 9

42 U.S.C. § 12711 ....................................................................... 1, 10

Pub. L. No. 111-22, 123 Stat. 1632 (2009), codified at 42 U.S.C. §§ 11381–11389 ................... 2

Pub. L. No. 117-328, 126 Stat. 4459 (2022) ............................................. *passim*

**Regulations**

2 C.F.R. § 200.205 ............................................................................. 8

*Notice Waiver for Continuum of Care Program (CoC Builds)*,
    90 Fed. Reg. 47809 (Oct. 2, 2025) ............................................ 15, 16

Exec. Order No. 14148 *Initial Rescissions of Harmful Executive Orders and Actions*, 90 Fed. Reg. 8237 (Jan. 28, 2025) .......................................................................... 3

Exec. Order No. 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, 90 Fed. Reg. 8339 (Jan. 29, 2025) .................................................. 3

Exec. Order No. 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* 90 Fed. Reg. 8615 (Jan. 30, 2025) .................... 3

Exec. Order No. 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, 90 Fed. Reg. 8633 (Jan. 31, 2025) .................................................................. 3

Exec. Order No. 14182, *Enforcing the Hyde Amendment*, 90 Fed. Reg. 8751 (Jan. 31, 2025) .................................................................. 3

Exec. Order No. 14202, *Eradicating Anti-Christian Bias*, 90 Fed. Reg. 9365 (Feb. 12, 2025) .................................................................. 3

Exec. Order No. 14205, *Establishment of the White House Faith Office*, 90 Fed. Reg. 9499 (Feb. 7, 2025) .................................................................. 3

Exec. Order No.14218, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10,581 (Feb. 25, 2025) .......................................................... 3

Exec. Order No. 14219, *Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory* Initiative, 90 Fed. Reg. 10,583 (Feb. 25, 2025) .......................................................... 3

Exec. Order No. 14321, *Ending Crime and Disorder on America's Streets*, 90 Fed. Reg. 35817 (July 29, 2025) .......................................................... 4

Exec. Order No. 14332, *Improving Oversight of Federal Grantmaking*, 90 Fed. Reg. 38,929 (Aug. 7, 2025) .......................................................... 4

**Other Authorities**

HUD, FR-6901-N-25A, *CoC Builds NOFO, available at* https://files.simpler.grants.gov/opportunities/14748f27-94b4-4045-a360-d42a6cdb6e8c/attachments/b7bafa6c-ef47-4ff3-99ff-bd390c5174fc/CoC-Builds-NOFO.pdf.. 3

HUD, FR-6902-N-25A, *CoC Builds NOFO, available at* https://files.simpler.grants.gov/opportunities/23e87946-467a-486f-b6c5-db8c6b3c2317/attachments/e1587989-e380-4704-b24d-83acc0128ff3/CoC-Builds-NOFO_FR-6902-N-25A.pdf. .......................................................... 3

## **INTRODUCTION**

At its core, this case involves Defendants' efforts to ensure the availability of funding to protect our Nation's most vulnerable individuals and families from the trauma of homelessness while simultaneously promoting self-sufficiency. Plaintiffs' suit stymies those efforts, possibly for good. The Court should correct this state of affairs and grant summary judgment for Defendants.

The Department of Housing and Urban Development ("HUD")'s September 5 Notice of Funding Opportunity (NOFO) made available $75,000,000 in grants to fund permanent supportive housing for homeless individuals, focusing on the elderly and physically disabled. These grants are available to states, local governments, non-profit organizations, Indian Tribes and Tribally Designated Housing Entities

Defendants' actions in issuing the NOFO, and conditions attached thereto, are consistent with the APA and other applicable statutes. At the outset, the statutes governing the NOFO provide broad discretion to the Secretary of HUD to award grants based on criteria established by the Secretary under 42 U.S.C. § 11386a(b)(1)-(G) and based on factors to be determined by the Secretary. Defendants acted consistently within this statutory discretion when attaching the challenged NOFO criteria. Nor did Defendants violate 42 U.S.C. § 12711, —HUD's criteria are not "based" on changing jurisdiction's laws or policies but are meant to make explicit the implicit obligations to comply with federal law.

Nor were Defendants' actions arbitrary and capricious. Defendants acted reasonably and prudently because the NOFO conditions, focusing on public safety, cooperation with law enforcement and prohibitions on illegal drug use, are sufficiently related to the funding goals of self-sufficiency and reduction of trauma. Under the APA's deferential standard, nothing more is required. And Plaintiffs' unlawful withholding or unreasonable delay claim is not tenable as the cause of any delay in issuing funding under the NOFO resulted from Plaintiffs' own actions in initiating this litigation.

As for Plaintiff's constitutional claims, the bulk of such claims are improper attempts to recast APA claims as constitutional ones. The Supreme Court has made clear that allegations

that the Executive has acted in excess of statutory authority cannot properly be presented as constitutional claims. And, even if that were not so, Plaintiffs' constitutional claims would fail on their merits for the reasons discussed herein.

Finally, no injunction, permanent or otherwise, is warranted in this matter. Should the Court find for Plaintiffs, the appropriate remedy is, at most, vacatur and remand to the agency to take future action consistent with the law and with its discretionary authority.

For all these reasons, the Court should grant summary judgment to Defendants and deny summary judgment to Plaintiffs.

## BACKGROUND

In 2009, Congress consolidated several homeless assistance grants into one Continuum of Care ("CoC") program. Pub. L. No. 111-22, div. B, § 1002(b)(1), 123 Stat. 1632, 1664 (2009), codified at 42 U.S.C. §§ 11381–11389 (the McKinney-Vento Homeless Assistance Act).

The CoC program is designed, in part, to quickly rehouse homeless individuals "while minimizing the trauma and dislocation caused "by homelessness," and "optimiz[ing] self-sufficiency among individuals and families experiencing homelessness." 42 U.S.C. § 11381(2), (4). One of the goals of this program was to codify in federal law the continuum of care planning process as a required and integral function necessary to generate the local strategies for ending homelessness. Pub. L. No. 111-22 § 1002(b)(2).

Within the broader CoC program, in fiscal year 2023, Congress appropriated funds for one-time grants "for new construction, acquisition, or rehabilitation of new permanent supportive housing." Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 126 Stat. 4459, 5158-61 (2022). This line-item appropriation came to be called the "CoC Builds" used for completely separate grants from those awarded through the larger CoC program grant competition. *See id.* The CoC Builds appropriation is novel—while the broader CoC program included support for permanent supportive housing, no program prior was dedicated solely to the construction, acquisition, or rehabilitation of new permanent supportive housing. In appropriating these funds,

Congress authorized HUD to award the CoC Builds grants "on a competitive basis, based on need and other factors to be determined by [HUD]." *Id*.

On July 19, 2024, HUD published a NOFO for the CoC Builds grants program.[1]  Funding pursuant to this NOFO was not awarded before the change in Administration.  After President Trump assumed office and issued a series of Executive Orders, HUD reviewed its open grants to ensure consistency with the new administration's policies and to ensure grant funds were being used in the most effective manner.[2]  As part of this review, HUD withdrew the original CoC builds NOFO and on May 16, 2025, published a revised NOFO (the "May NOFO").[3]

Upon receipt of applications for the May NOFO, HUD conducted a merit review and a risk review to identify potential awardees.  *See* Administrative Record ("AR") at 235.  While HUD had fully intended to make awards under the May NOFO, before it did so, the President issued two new Executive Orders that updated the policy priorities of the Administration.  *See* Exec. Order No. 14321, *Ending Crime and Disorder on America's Streets*, 90 Fed. Reg. 35817 (July 29, 2025);

---

[1] HUD, FR-6902-N-25A, *CoC Builds NOFO*, *available at* https://files.simpler.grants.gov/opportunities/23e87946-467a-486f-b6c5-db8c6b3c2317/attachments/e1587989-e380-4704-b24d-83acc0128ff3/CoC-Builds-NOFO_FR-6902-N-25A.pdf.

[2] *See* Exec. Order No. 14218, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10,581 (Feb. 25, 2025); Exec. Order No. 14202, *Eradicating Anti-Christian Bias*, 90 Fed. Reg. 9365 (Feb. 12, 2025); Exec. Order No. 14219, *Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory* Initiative, 90 Fed. Reg. 10,583 (Feb. 25, 2025); Exec. Order No. 14205, *Establishment of the White House Faith Office*, 90 Fed. Reg. 9499 (Feb. 7, 2025); Exec. Order No. 14182, *Enforcing the Hyde Amendment*, 90 Fed. Reg. 8751 (Jan. 31, 2025); Exec. Order No. 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, 90 Fed. Reg. 8633 (Jan. 31, 2025); Exec. Order No. 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*  90 Fed. Reg. 8615 (Jan. 30, 2025); Exec. Order No. 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, 90 Fed. Reg. 8339 (Jan. 29, 2025); Exec. Order No. 14148, *Initial Rescissions of Harmful Executive Orders and Actions*, 90 Fed. Reg. 8237 (Jan. 28, 2025).

[3] HUD, FR-6901-N-25A, *CoC Builds NOFO*, *available at* https://files.simpler.grants.gov/opportunities/14748f27-94b4-4045-a360-d42a6cdb6e8c/attachments/b7bafa6c-ef47-4ff3-99ff-bd390c5174fc/CoC-Builds-NOFO.pdf.

Exec. Order No. 14332, *Improving Oversight of Federal Grantmaking*, 90 Fed. Reg. 38,929 (Aug. 7, 2025); AR at 89.

Thus HUD worked expeditiously to meet deadlines to allow for obligation of the funding before the expiration of funding on September 30, 2025, the end of the fiscal year. HUD quickly developed and issued the revamped NOFO on September 5, 2025 ("September NOFO"), which superseded the CoC Builds NOFO published on May 16, 2025. AR 2116; FR-6902-N-25A, ¶ III.F., at 14. This NOFO provides for $75,000,000 grants to fund permanent supportive housing for homeless individuals. *Id*. at 2121. These grants are available to states, local governments, non-profit organizations, Indian Tribes and Tribally Designated Housing Entities. *Id*. at 2124.

Unwilling to let the funds expire, and cognizant of the limited time to satisfy the award process, HUD limited the application period to one week and shortened the time necessary to apply by replacing narrative responses with a streamlined Yes/No questionnaire. HUD anticipated that it would make approximately eight awards. FR-6902-N-25A, ¶ I.A.2, at 6. But before HUD could consider any submitted applications, Plaintiffs filed suit and HUD has been enjoined from taking any action on the September NOFO.

The NOFO laid out several terms, conditions and criteria for applicants to be eligible for an award. Among these were selection criteria that were not in the May 2025 NOFO. These criteria, which form the crux of this dispute, are focused on protecting public safety, promoting recovery, and cooperating with law enforcement. AR at 2140-45. In the protecting public safety category, these criteria include certifying that (1) The city, county, or state in which the project is located: (a) prohibits public illicit drug use and enforces such prohibition; (b) prohibits public camping or loitering and enforces such prohibition; (c) enforces laws and/or ordinances prohibiting urban squatting; (d) utilizes standards that address individuals who are a danger to themselves or others; (e) and implements and complies with the Sex Offender Registration and Notification Act ("SORNA"), particularly in the case of registered sex offenders with no fixed address, including by adequately mapping and checking the location of homeless sex offenders. AR at 2144-45.

4

In the promoting recovery category, applicants must certify that they do not and will not operate drug injection sites or "safe consumption sites," knowingly distribute drug paraphernalia on or off of property under their control, or permit the use or distribution of illicit drugs on property under their control.  AR at 2140.

And in cooperating with federal law enforcement category, applicants must certify that the city, county, or state in which the project is located cooperates with Federal immigration enforcement.  *Id.* at 2145.

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint for declaratory and injunctive relief on September 11, 2025, seeking to set aside what it terms the "new criteria" in the NOFO; to enjoin Defendants from imposing or implementing the criteria; and sought an order from the Court preserving the CoC Builds funds past their September 30, 2025 expiration date.  The Complaint alleged violations of the Administrative Procedure Act (APA) and various constitutional provisions. Compl., ECF No. 1.   On September 11, 2025, Plaintiffs also moved for a temporary restraining order, seeking similar relief as the complaint in addition to seeking an order to maintain the CoC Builds Funds pending further order of the Court.  Mot. for TRO, ECF No. 2.

The Court granted the TRO on September 14, 2025.  ECF No. 14.  This TRO remains in place.  On November 14, 2025, Plaintiffs filed an amended complaint, ECF No. 25, along with its motion for summary judgment.  ECF No. 26.  The amended complaint is substantially similar to the original complaint.  Plaintiffs requested relief includes that the Court (1) set aside or vacate the September 5 NOFO and the "New Criteria"; (2) preliminarily and permanently enjoin Defendants from imposing the New Criteria, "or any substantively similar criteria on any HUD CoC awards in any manner"; (3) stay the new criteria; (4) continue to preserve the NOFO funds past their expiration pending resolution of this case; (5) and compel Defendants to award the $75 million that Congress appropriated under the CoC program for permanent supportive housing "pursuant to lawful criteria and process.".  Prayer for Relief, Am. Compl., ECF No. 25 at 33-34.

## STANDARD OF REVIEW

When agency action is challenged under the APA, "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Minuteman Health, Inc. v. U.S. Dep't of Health & Human Servs.*, 291 F. Supp. 3d 174, 189–90 (D. Mass. 2018); *see also R.I. Latino Arts v. Nat'l Endowment for the Arts,* Civ. A. No. 25-79 WES, 2025 WL 2689296, at *4 (D.R.I. Sep. 19, 2025). Under the APA, an agency action may not be set aside unless it is "arbitrary," "capricious," or "not in accordance with law." 5 U.S.C. § 706(2)(A). APA review of final agency action is highly deferential, and the agency's actions are presumed to be valid. *See River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009). "[A] court is not to substitute its judgment for that of the agency," *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (citation omitted), but instead to assess only whether the decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment," id. (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Thus, a reviewing court's only role is to "determine whether the agency's decision is supported by a rational basis, and if so, [it] must affirm." *River St. Donuts*, 558 F.3d at 114.

## ARGUMENT

I.      **Plaintiffs' Claims Are Precluded Because They Seek To Challenge Decisions Quintessentially "Committed To Agency Discretion By Law"**

While Congress appropriated $75 million for the CoC Builds grants generally, it did not—with certain limited exceptions discussed later—impose restrictions on how funding should be further disbursed from within that lump sum. Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 126 Stat. at 5158, 5160. Accordingly, but for those excepted categories, Plaintiffs seek to challenge decisions quintessentially "committed to agency discretion by law," for which the APA does not provide an avenue for review. 5 U.S.C. § 701(a)(2). An agency's determination of how best to condition appropriated funds to fulfill its legal mandates is classic discretionary agency action and agencies retain broad discretion in creating, awarding, and

6

terminating specific grants. In *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993), the Supreme Court explained that the "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion," because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* So long as the agency abides by the relevant statutes, the APA "gives the courts no leave to intrude" via arbitrary-and-capricious review. *Id.*

While the earmark for the CoC Builds grant is part of a larger lump-sum, this particular line-item is novel—and different—as compared to the broader CoC program. This grant uniquely focuses on increasing the supply of permanent supportive housing, and the appropriation expressly affords HUD wide discretion in administering the grant, "based on need and other factors to be determined by [HUD]." Pub. L. No. 117-328, 126 Stat. at 5160. Given this broad authority, and except to the extent a specific statutory restriction applies, and are thus not otherwise subject to APA review.

## II.    Defendants Acted Lawfully Under the APA

Even if Defendants' actions are subject to APA review, Defendants still acted lawfully under the APA. This Court should thus grant summary judgment to Defendants.

### A.    Defendants have acted within their statutory authority and consistent with the law.

HUD is permitted to set terms for the projects HUD funds with grants. And 42 U.S.C. § 11382, governing the CoC program, provides broad and express discretion to the secretary to award grants based on criteria "established by the Secretary". 42 U.S.C. § 11386a. The statute provides certain required criteria that HUD must consider but does not preclude adding additional criteria. *Id.* Further it authorizes HUD to set "such other factors as the Secretary determines to be appropriate" to carry out the CoC program in "an effective and efficient manner." *Id.* § 11386a(b)(1)(G).

7

Before the Secretary can disburse CoC grant funds, the recipient must enter into an agreement with HUD in which it agrees to certain conditions. *Id.* § 11386(b). The recipient must agree, for example, to monitor and report the project's progress and the provision of matching funds to HUD. *Id.* § 11386(b)(2), (6). The recipient must further agree to ensure, "to the maximum extent practicable," that homeless individuals are involved in maintaining and operating facilities for the project and in providing supportive services. *Id.* § 11386(b)(3).

The recipient must agree to "terms and conditions" the Secretary establishes to carry out the CoC program in "an effective and efficient manner." *Id.* at § 11386(b)(8). HUD may determine an applicant's ability to conform to the requirements of the NOFO at the time of application rather than after the award or issuance of a grant. *See* 2 C.F.R. § 200.205. Accordingly, it was reasonable and appropriate for HUD to issue its conditions and require compliance in advance of any award.

Further, the appropriations statute providing the funding for the NOFO at issue here states that funds should be awarded "based on need and *other factors to be determined by the Secretary*." *See* Pub. L. No. 117-328, 136 Stat. at 5160 (emphasis added). Such language indicates broad deference to the agency's choices as to establishing criteria for awarding grants generally and for awarding this CoC Builds grant particularly.

These provisions comfortably encompass the funding conditions at issue here. As described in more detail below, each condition is directed at ensuring that grant dollars are not used for certain purposes inconsistent with the program's goals of reducing trauma caused by homelessness, promoting self-sufficiency, and supporting the continuum of care planning process at the local level: prohibiting public drug use, public camping or loitering, utilizing standards that address individuals who are a danger to themselves, complying with federal law requirements under SORNA and cooperating with federal immigration enforcement. *See* AR at 2140-45.

By prohibiting recipients from using grant funds for these purposes, the conditions ensure that grant funds are used effectively and efficiently to promote the program's statutory goals and that funds are used consistently with federal law.

The fact that the statutes governing the CoC program do not mention the specific criteria added by Defendants does not mean that those criteria are precluded, as Plaintiffs insinuate. *See* Pls.' Mem. in Supp. of Mot. For Summ. J., ("Pls. Mem.") at 9, ECF No 26-1.  HUD is best situated to determine what criteria are "effective and efficient," which is why Congress afforded HUD the discretion to add more criteria.  42 U.S.C. § 11386a(b)(1)(G); Pub. L. No. 117-328, 136 Stat. at 5160 ("*Provided*, That these amounts shall be awarded on a competitive basis, based on need and other factors to be determined by the Secretary[.]").

Nor does the fact that certain potential applicants in certain jurisdictions might be unable to meet the NOFO's criteria mean that HUD is precluded from establishing that criteria under the broad authority given to the agency.

And the "context" of the Continuum of Care program does not "cabin" HUD's authority in the manner Plaintiffs suggest. *See*  Pls. Mem.at 21.  Plaintiffs claim that the challenged conditions are not of the "same kind" as other conditions in section 11386(b) and thus are unauthorized under the statute.

The other statutory conditions do not limit the Secretary's discretion in the manner Plaintiffs contemplate Section11386(b) also requires recipients to agree to substantive conditions that implicate policy choices.  Recipients must agree, for example, "to ensure, to the maximum extent practicable, that individuals and families experiencing homelessness are involved, through employment, provision of volunteer services, or otherwise, in constructing, rehabilitating, maintaining, and operating facilities for the project and in providing supportive services."  42 U.S.C. § 11386(b)(3).  Other conditions require recipients to take certain steps to ensure that children served in the CoC program are enrolled in school, can access services and programs to which they are entitled, and are placed in housing as close as possible to their original school. *Id*. § 11386(b)(4)(D), (7).  Considering all the conditions required in section 11386(b), and the

catch-all provisions of § 11386(b)(8), the canon of *ejusdem generis* confirms that Congress granted the Secretary broad authority to impose a range of conditions on CoC recipients, from the ministerial to the substantive, so long as they are designed to enhance the program's efficiency and effectiveness.[4]

Consistent with that statutory delegation, most of the specific conditions described in the NOFO are related to the subject of the funding and are directed at ensuring that grant dollars are not used for purposes inconsistent with the program's goals. For instance, criteria focused on reducing public camping and loitering, public drug use, urban squatting, etc., are tied to the purpose of the program –reducing the trauma caused by homelessness and promoting self-sufficiency, AR 1337, – and fit comfortably within the Secretary's discretion. Such criteria do not involve "blackballing jurisdictions" based on local policies or treating the homeless "as criminals", Pls. Mem. at 22, and Plaintiffs provide no basis for so claiming. Rather, the criteria are focused on supporting the overall purpose of the NOFO, *see* AR at 916, and, as the NOFO itself states, on promoting recovery, protecting public safety and cooperating with federal law enforcement. AR at 2140-45.

Plaintiffs further argue that 42 U.S.C. § 12711 precludes HUD's use of the "jurisdiction-based criteria". Pls. Mem. at 19-20. Plaintiffs are incorrect. 42 U.S.C. § 12711 states that

> the Secretary shall not establish any criteria for allocating or denying funds made available under programs administered by the Secretary *based on* the adoption, continuation, or discontinuation by a jurisdiction of any public policy, regulation, or law that is (1) adopted, continued, or discontinued in accordance with the jurisdiction's duly established authority, and (2) not in violation of any Federal law.

*Id.* (emphasis added). But HUD's criteria are not "*based*" on compelling jurisdictions to take a particular action such as adopting or discontinuing "any public policy, regulation or law…". *Id.* Rather, they are based on carrying out the CoC program efficiently and effectively by, *inter alia*,

---

[4] Further, other parts of the statute contemplate some of the criteria used here. 42 U.S.C. § 11385, subsection (c) provides for example, that funding can include "providing security arrangements necessary for the protection of the residents . . . and providing other appropriate services."

promoting recovery, protecting public safety and cooperating with federal law enforcement.  AR at 2140-45.

Further, the focus of the NOFO's new criteria is on ensuring compliance with federal law.  Criteria that require compliance with federal law cannot be contrary to § 12711, since a law or policy protected under that provision cannot "violat[e] federal law."  So, criteria that, for instance, focus on cooperating with federal law enforcement, prohibiting illicit drug use, and supporting SORNA, all aimed at ensuring compliance with federal law, do not run afoul of § 12711.[5]

Thus, HUD was compliant with relevant statutory authority and acted consistently with the law when establishing the NOFO criteria here.

**B.    HUD's determination to add the challenged criteria was reasonable and not arbitrary or capricious**

"The APA's arbitrary-and-capricious standard requires" only that an "agency action be reasonable," and "[j]udicial review under that standard is deferential."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  This standard "deems the agency action presumptively valid provided the action meets a minimum rationality standard."  *Sierra Club v. EPA*, 353 F.3d 976, 978 (D.C. Cir. 2004); *see also Atieh v. Riordan*, 797 F.3d 135, 138 (1st Cir. 2015) (noting narrowness of arbitrary-and-capricious standard and that "a reviewing court 'may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions.'" (quoting *River St. Donuts*, 558 F.3d at 114).

Defendants' actions meet this test.  Most of the specific conditions described in the NOFO are related to the subject of the funding and that is all that is required.  Nearly all are related to

---

[5] SORNA requires "each jurisdiction [to] maintain a jurisdiction-wide sex offender registry" and requires sex offenders to submit information, including their habitual residence, to the jurisdiction for inclusion in the registry. 34 U.S.C. §§ 20912(a); 20914.  "Jurisdiction" is defined as a State, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Northern Mariana Islands, the U.S. Virgin Islands, or a federally recognized Indian tribe.  34 U.S.C. § 20911(10).

public safety, cooperation with law enforcement, the promotion of self-sufficiency or addiction recovery. *See, e.g.*, AR at 1337. It is neither arbitrary nor capricious to ensure that localities will uphold public safety, enforce drug prohibitions, or cooperate with law enforcement, in the context of providing this NOFO funding.

For instance, on criteria focused on illegal drug use, the record reflects that such conditions are aimed at reducing addiction and overdose deaths among the homeless population moving into permanent supportive housing. *See* AR at 1423 ("Seattle saw a 300% increase in overdose deaths inside PSH between 2020 and 2023. Where Federal dollars are concerned, the goal is to subsidize recovery, not addiction.").

Thus, Defendants acted reasonably in attaching conditions to the NOFO focused on prohibiting public drug use or on not operating sites for illicit drug use (actions that would themselves violate federal law). *See also* 21 U.S.C. § 856(a) (prohibiting maintaining sites for the purpose of manufacturing, distributing, or using any controlled substances.).

So too with other criteria like prohibitions on public camping and squatting, compliance with SORNA or cooperation with federal immigration enforcement. The Supreme Court has already considered and acknowledged the nexus between public camping and the homelessness crisis. In *City of Grants Pass v. Johnson*, 603 U.S. 520, 529-31 (2024), the Court noted reports that "the exponential increase in encampments in recent years has resulted in an increase in crimes both against the homeless and by the homeless;" encampments provide "dependable access to illegal drugs;" they contribute to rampant disease among the homeless due to poor sanitation; and homeless people in encampments overwhelmingly tend to reject offers to stay in shelters or use other public services. *Id.* (cleaned up).

Thus, HUD could reasonably conclude that, because of the negative externalities caused by such public camping, CoC Builds funds would effectively reach more homeless individuals if applicants resided in jurisdictions that prohibit public camping.

As for the SORNA criteria, jurisdictions receiving federal funds are required to "maintain a jurisdiction-wide sex offender registry". 34 U.S.C. § 20912(a). The SORNA criteria ensures

12

that CoC Builds funds are used only in jurisdictions that comply with this federal law, are not used to house those who violate federal law and to ensure the safety of residents at permanent supportive housing facilities.

As with the SORNA criteria, cooperating with immigration enforcement merely requires compliance with federal law. And illegal immigrants, with limited exceptions, are not eligible for any federal public benefit, including benefits provided by the CoC Builds grants. 8 U.S.C. § 1611(a). By limiting funds to jurisdictions that comply with federal law regarding illegal immigrants and their access to federal benefits, the CoC Builds grants can better reach the members of the homeless population who are eligible for federally funded permanent supportive housing.

These are all "rational reasons" supporting the agency's decision to add the new challenged conditions and withstand arbitrary and capricious review. The fact that Plaintiffs disagree with HUD's assessment of the efficacy or need for these conditions does not alter their reasonableness. *See, e.g.*, *New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 133 (D.D.C. 2010) ("[W]hile New Life may understandably disagree with HHS' determination, mere disagreement cannot discharge its burden of establishing that the determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

Plaintiffs further take issue with alleged changes to HUD's policies and argue that such changes have not adequately considered so-called "best practices" for homelessness policy. Pls. Mem. at 24.[6] But Defendant's "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to

---

[6] Plaintiffs also cite to an email in the record from a HUD employee to suggest that HUD did not engage in appropriate legal review of the NOFO and that HUD was violating court orders. *See* Pls. Mem. at 11; AR at 586. But contrary to the musings of this employee, the record is replete with references to HUD's legal review of the NOFO. *See, e.g.*, AR at 598; 1140-41; 1209-1210; 1220-21; 1226; 1285. Further, Defendants are unaware of any preliminary injunctions or TROs then existing that would have prevented moving forward with the September 5 NOFO.

be better, which the conscious change of course adequately indicates." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Finally, as for Plaintiffs' putative reliance interests, apart from the fact that Plaintiffs know or should know that HUD may withdraw a NOFO and issue a revised NOFO,[7] no grants were ever awarded under the previous NOFO and no potential applicant was assured of receiving a grant. The fact that a potential applicant previously applied to a similar NOFO and was preliminary approved provides no guarantee of future selection under a different, revised NOFO and should not create a reliance interest. Thus, any reliance interests are misplaced as a matter of law, plaintiffs' self-serving declarations notwithstanding.[8] And even in cases where grantees have already taken on significant commitments based on the assumption of future funding, the Supreme Court has emphasized the agency may determine that other interests and policy concerns outweigh any reliance interests, or it may accord those interests no or diminished weight. *Regents of Univ. of Cal.*, 591 U.S. at 32. Thus, any putative reliance interest of the Plaintiffs must be judged in light of the policy and practical concerns outlined by Defendants.

     **C.**    Constitutional claims: As for Plaintiffs' claim that Defendants' actions violate the constitution and thus violate the APA, Plaintiffs present no APA-specific argument, merely pointing to their freestanding constitutional claims. *See* Pls. Mem. at 25. Defendants address these arguments *infra* at 17-22.

---

[7] Defendants are altering no longstanding policies that would potentially generate a reliance interest. Indeed, the May NOFO made changes to the January 2024 NOFO (with no complaints from Plaintiffs). And the September 5 NOFO made changes to the May NOFO.

[8] And Plaintiffs' declarants admit that they never received any awards from prior NOFOs. *See* Shea Decl. ¶ 11, ECF No. 26-4 (WDC never "won an award, nor did HUD execute a grant agreement with WDC.") Hill Decl. ¶ 12, ECF No. 26-5 ("Although HUD received and reviewed applications in response to the May 2025 NOFO, the agency has not executed any grant agreements with applicants based on applications submitted under that NOFO."); Olivia Decl. ¶ 17, ECF No. 26-3 ("HUD received and reviewed applications in response to the May 2025 NOFO" and "selected recipients" but never "executed any grant agreements.").

**D.**   The "Sex Binary Criterion": One of the challenged conditions is the "Sex Binary Criterion," which requires that applicants do not deny the sex binary in humans or promote the idea that "sex is a chosen or mutable characteristic."   AR at 2145.   Because Defendants acknowledge that this criterion as drafted may be read to apply to grantee actions beyond the scope of federal funding, *contra Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013).   Defendants are not defending this provision here.   Defendants reserve all rights with respect to future iterations of conditions; iterations that are not before this court.

And even if the sex binary criteria is contrary to law, the appropriate remedy, as discussed *infra* at 24-27, is not to set aside or vacate the entire NOFO.   Rather, the lawful parts of the NOFO can be severed from the unlawful parts and thus preserved and remanded to the agency for appropriate action consistent with the law.

**E.**   **Secretary Turner validly exercised his authority to waive the 30-day notice and application period.**

Plaintiffs further contend that HUD violated the APA by publishing the NOFO criteria only seven days before the application deadline.   Plaintiffs maintain that this violates a statute requiring a thirty-day notice period absent an emergency.   *See* 42 U.S.C. § 3545 (HUD Reform Act).   But an emergency did exist: the funds were set to expire and HUD had a very tight window to rework the NOFOs consistent with the new executive orders.

The Secretary retains the right to waive the seven-day requirement and is given thirty days after providing a waiver to "publish in the federal register [his] reasons for so doing.   *Id.* § 3545(a)(5).

HUD followed these procedures.   As the AR indicates, the Secretary waived the thirty-day notice period before the publication of the NOFO.   *See* AR at 92; 98-101.   The Secretary then published his notice of waiver in the federal register on October 2, 2025, within thirty days after September 5 and as mandated by law.   *30-Day Notice Waiver for Continuum of Care Program (CoC Builds)*, 90 Fed. Reg. 47809, 47809-10 (Oct. 2, 2025); AR at 1973-1975.

That notice explains that a waiver was necessary to give the current administration

15

adequate time "to review the prior administration's grantmaking procedures" and to ensure that "future grantmaking activity aligned with the current administration's policy priorities." 90 Fed. Reg. at 47810.  That review process necessitated that the "CoC Builds NOFO, originally published in May 2025 be[ ] republished in September after being reevaluated to ensure grants would be awarded in a manner" consistent with current administration priorities.  *Id.*  As a result of this review process, "September 5, 2025, was the earliest the NOFO could be published while still meeting HUD's statutory requirement to obligate the CoC funds before they expire on September 30, 2025."  *Id.*

The circumstances here differ markedly from those in *Make the Road N.Y.* v. *Pompeo,* 475 F. Supp. 3d 232 (S.D.N.Y. 2020), cited by Plaintiffs.  There, the Department of State issued a rule "just days before [the rule] was to go into effect", after doing nothing for over a year, as a means to "evade the notice-and-comment rulemaking process mandated under the APA."  *Id.* at 262.

But here Defendants are not seeking to evade any APA or other statutory requirements. Nor is HUD seeking to evade notice and comment procedures, which involve different considerations.  *See Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 115 (2d Cir. 2018) (APA's notice-and-comment requirements "provid[e] a forum for the robust debate of competing and frequently complicated policy considerations.").  Rather, the agency followed the specific procedures required by the HUD Reform Act in seeking a waiver of the 30-day deadline.  Thus, Defendants have not violated any required procedures and have not violated the APA.

### F.    No agency action was unlawfully withheld or unreasonably delayed

Plaintiffs now further contend that they are entitled to summary judgment under 5 U.S.C. § 706(1), as Defendants have "unlawfully withheld or unreasonably delayed agency action" by failing to award CoC Builds funding before the expiration of the appropriation.  Pls. Mem. at 37.

This argument strains credulity.  As Plaintiffs know, Defendants were poised to award and obligate all the NOFO funding by the end of the fiscal year on September 30, 2025, when the

16

appropriation expired.  Awards were not issued only because of this litigation initiated by the Plaintiffs.  Absent Plaintiffs' lawsuit, awards would have been issued and funds obligated, as contemplated by the September NOFO.  Thus, no unlawful withholding or unreasonable delay on the agency's part occurred here.  And no appeal to the "TRAC" factors, *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984), will alter such an obvious conclusion.[9]

Further, it is passing strange for Plaintiffs to make a § 706(1) claim here when the TRO remedy they sought and received, mandated that the funds that otherwise would have expired on September 30, 2025, remain available.  In other words, because of the TRO, the NOFO funds remain available for obligation at the conclusion of this litigation should this court determine that is appropriate.

Thus, no funds have been unlawfully withheld or unreasonably delayed.

## II.    Plaintiffs' Constitutional Claims are Either Foreclosed or Unavailing

As an initial matter, Plaintiffs cannot bring freestanding constitutional claims that are statutory in nature.  Such claims are improper constitutional challenges because they are, at their heart, purely arguments that the agency has violated a statute.  The Supreme Court has confirmed, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims."  *Dalton v. Specter*, 511 U.S. 462, 473 (1994).

In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine."  *Id.* at 471.  Not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id*. at 472.  This keeps with the long tradition of "distinguish[ing] between claims of constitutional violations and claims that an official has acted in excess of his statutory authority."  *Id.* (collecting cases).  The

---

[9] Of course, the TRAC factors are guided by a "rule of reason." *TRAC*, 750 F.2d at 80.  No rule of reason would conclude that an agency that was ready, willing and able to fulfill its obligations but was prevented from doing so by the actions of the very parties now complaining about agency inaction, somehow violated the APA.

Constitution is implicated only if executive officers rely on it as "[t]he only basis of authority" or if the officers rely on an unconstitutional statute. *Id.* at 473 & n.5; *see also Global Health Council v. Trump*, 153 F.4th 1, 17 (D.C. Cir. 2025) (holding that under *Dalton*, "grantees lack a cause of action to bring their freestanding constitutional claim.").

Examining each constitutional claim in turn, it is evident that none is viable.

### 1. Separation of Powers

Plaintiffs contend that the various challenged NOFO conditions challenge violate separation of powers principles. Pls. Mem. at 28-32.

In this case, because Plaintiffs' separation of powers claims (including those implicating the Spending Clause, the Presentment Clause and the Take Care Clause) focus entirely on Plaintiff's contentions that Defendants have not acted consistent with their statutory obligations, *see id.*, such claims are untenable under *Dalton*.

In any event, Defendants have not violated the Constitution's separation of powers-related provisions.

#### a. Spending Clause

Plaintiffs assert that Defendants' conditions are unreasonable and unconnected to the purposes of the program for which the conditions are attached. This, they argue, violated the Spending Clause. Pls. Mem. at 36.

Article I of the Constitution confers on Congress the authority to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. Congress therefore may, "[i]ncident to" its spending power, "attach conditions on the receipt of federal funds," *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 530 (N.D. Cal. 2017) and "Congress can delegate some discretion to the President to decide how to spend appropriated funds" so long as "any delegation and discretion is cabined by [relevant] constitutional boundaries." *Id.* at 531. *See also State of New York v. U.S. Dep't of Just.,* 1:25-cv-00345-MSM-PAS, 2025 WL 2618023, at * 20 (D.R.I. Sep. 10, 2025), *appeal filed*, 25-2099 (1st Cir. Nov. 10, 2025). Consistent with that authority,

Congress has authorized agencies administering certain grant programs—including those at issue here—to impose conditions on their receipt. *See* 42 U.S.C. § 11386(b)(8).

And as explained above in the APA section, *supra* at 7-11, Plaintiffs have failed to establish that the challenged conditions are beyond the agencies' authority. Both the statutes and the appropriating language establish HUD's authority to develop factors for determining the grant awards. While Plaintiffs may bring an APA claim to dispute the correct interpretation of the statutes and the scope of the agency's authority to issue new conditions, there is no basis for a constitutional claim on these facts. *See Dalton*, 511 U.S. at 473; *Amica Ctr. for Immigrant Rts. . v. U.S. Dep't of Just.*, Civ. A. No. 25-298 (RDM), 2025 WL 1852762, at *17 (D.D.C. July 6, 2025), *appeal filed*, 25-5254 (D.C. Cir. Oct. 14, 2025).

Nor are Defendants' withholding any funds here in a manner that would violate the Spending Clause. Just the opposite: Defendants' intent was to award all expiring funds prior to the end of the fiscal year.

### b. Presentment Clause

Plaintiffs Presentment Clause claim fares no better. Plaintiffs contend that "the imposition of the New Criteria attempts to amend unilaterally the statutes governing the CoC Builds grant program in violation of the Presentment Clause." Pls. Mem. at 29. To begin, Defendants have not amended any statute; rather, as discussed repeatedly, they acted consistent with Congressional direction to attempt to obligate the CoC Builds funding before the end of the fiscal year. But, in any event, this case differs significantly from *Clinton v. City of New York*, 524 U.S. 417, 436-41 (1998), where the Supreme Court held that the Line Item Veto Act violated the Constitution's Presentment Clause by allowing the President to cancel portions of statutes enacted by Congress. The instant suit, by contrast, does not involve "unilateral Presidential action that either repeals or amends parts of duly enacted statutes." *Id*. at 439. Rather, the dispute here concerns whether conditions attached to a funding opportunity are

consistent with the Defendants' statutory authority and discretion.  And as established, HUD has such authority and discretion.

### c.  Take Care Clause

Through the Take Care Clause, the Constitution vests the President with broad, discretionary authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.  Inevitably, the laws that the President executes are those enacted by Congress.  But the Take Care Clause does not provide an opening for any plaintiff seeking to challenge the way the President executes Congress's laws.  Rather, as the Supreme Court has recognized, the duty of the President when exercising his power to see that the laws are faithfully executed is "purely executive and political," and not subject to judicial direction. *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866); *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 165–66 (1803) ("[T]he President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character.").  To hold otherwise would upset our constitutional scheme of separation of powers and allow judicial superintendence over the exercise of Executive power that the Clause commits to the President alone. *Baker v. Carr*, 369 U.S. 186, 217 (1962) (Courts lack jurisdiction over a claim where there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department."); *see also Dalton*, 511 U.S. at 474–75 (judicial review of discretionary Presidential decisions "is not available"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992) (holding that it would be improper for the courts to take over the President's duty to "take Care that the Laws be faithfully executed" (quoting U.S. Const. art. II, § 3); *Marbury*, 5 U.S. (1 Cranch) at 170 ("The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court."); *Chi. & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 114 (1948) (refusing to review President's decision that "embod[ied] Presidential discretion as to political matters beyond the competence of the courts to adjudicate"); *Mississippi*, 71 U.S. (4

20

Wall.) at 499.

Nor does the Take Care Clause provide a basis to review the actions of subordinate Executive Branch officials. The Clause speaks only to the President, not to his subordinates, and ensures that the President is principally responsible for the actions of the Executive Branch and directly accountable to the people through the political process. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–93 (2010) ("It is his responsibility to take care that the laws be faithfully executed." (emphasis omitted)); *id.* at 495–97; *see also Printz v. United States*, 521 U.S. 898, 922 (1997); *Morrison v. Olson*, 487 U.S. 654, 689–90 (1988); *Clinton v. Jones*, 520 U.S. 681, 712–13 (1997) (Breyer, J., concurring). A subordinate Executive officer cannot violate the President's duty to faithfully execute the laws. Thus, to the extent Plaintiffs seek summary judgment on constitutional grounds, Plaintiff cannot do so through the Take Care Clause, but must do so, if at all, through the APA, which in this case presents separate insurmountable obstacles for Plaintiff for the reasons discussed above.[10]

## 2. __Tenth Amendment__

Plaintiffs' Tenth Amendment argument similarly fails. The Tenth Amendment embodies the principle that the "pre-existing sovereign States" (and their subdivisions) retain their sovereignty under the Constitution and that the federal government may not encroach upon that sovereignty. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 801 (1995); *New York v. United States*, 505 U.S. 144, 156 (1992).

Plaintiffs claim that what they term the "Jurisdiction Criteria" violates the Tenth Amendment by coercing "states to adopt the Administration's preferred policies on immigration, homelessness, and more." Pls. Mem at 32. But the Plaintiffs are not states or localities and thus have limited standing to make a Tenth Amendment challenge here. Moreover, even if imposing conditions on grants to plaintiffs could somehow implicate states' rights, since plaintiffs may

---

[10] While Plaintiffs' brief suggests that Defendants have separately violated the Presentment and Take Care Clauses, the Amended Complaint contains only a general Separation of Powers count without specific reference to those clauses. *See* Am. Compl., ECF No. 25, Count VI, ¶¶ 116-121.

decline to apply for the grants to which any alleged offensive conditions are attached, there is no coercion, nor is there any commandeering or encroachment on any state's sovereignty. *See, e.g., FERC v. Mississippi*, 456 U.S. 742, 766 (1982) ("[I]t cannot be constitutionally determinative that the federal regulation is likely to move the States to act in a given way[.]"); *see also Env't Def. Ctr v. EPA*, 344 F.3d 832, 847 (9th Cir. 2003) ("[A]s long as the alternative to implementing a federal regulatory program does not offend the Constitution's guarantees of federalism, the fact that the alternative is difficult, expensive or otherwise unappealing is insufficient to establish a Tenth Amendment violation." (citation omitted)).

### 3. <u>First Amendment and the Sex Binary Criteria</u>

As counsel noted at the TRO hearing, the government is not defending the Sex Binary Criteria to the extent the condition can be read to restrict applicant views outside the context of federal funding. Defendants do not, however, concede that the Constitution precludes the use of such conditions entirely and in all contexts, as the federal government is not generally required under the First Amendment to use federal funds to promote gender ideology. *See, e.g., Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 98-99 (D.D.C. 2025). Again, though, this Court should not reach the issue of the constitutionality of potential future versions of this condition.

## III. **Plaintiff's Ultra Vires Claims are Foreclosed**

Plaintiffs' ultra vires claims also fail. As Plaintiffs admit, ultra vires claims are unavailable if a statutory scheme provides for meaningful judicial review. Pl. Mem. at 36. *See also Nuclear Regul. Comm'n v. Texas,* 605 U.S. 665, (2025) ("*NRC*"). Indeed, because of the strict limitations imposed on non-statutory review, ultra vires claims have been described as "'essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds.'" *NRC*, 605 U.S at 681-82 (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009). Such is the case here because the APA provides an available route to a remedy. Indeed, Plaintiffs ultra vires claims are wholly duplicative of their APA claims.

Further, ultra vires review applies "only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition*' in a statute." *Id.* at 681.

(citation omitted). That is not the case here, as explained above, *supra* at 7-11. Ultra vires review is not APA review outside the context of the APA—rather, it is a "demanding standard" where "[t]he agency overstep must be 'plain on the record and on the face of the [statute].'" *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022) (quoting *Oestereich v. Selective Serv. Sys. Loc. Bd. No. 11, Cheyenne, Wyo.*, 393 U.S. 233, 238 n.7 (1968)). Plaintiffs fail to address this standard, much less establish how they satisfy it—merely citing back to the APA section of its brief, which operates under different standards.

In any event, the ultra vires claims fail on their merits for the same reasons as those described above as to the APA, given that "if the plaintiff's claims would have failed under the APA, then those same claims necessarily 'could not succeed under' ultra vires review, which has an even 'narrower scope.'" *See id.* at 766 (quoting *Trudeau v. FTC*, 456 F.3d 178, 190 (D.C. Cir. 2006)).

## IV. Any Remedies Should Be Narrowly Tailored

### 1. Under the APA, the appropriate remedy is limited to the agency action giving rise to the suit rather than a forward-looking injunction.

It is a bedrock principle of equity that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Trump v. CASA*, 606 U.S. 831 (2025) (a court granting equitable relief "may administer complete relief *between the parties.*" *Id.* at 851 (citation omitted)). "Under this principle, the question is not whether an injunction offers complete relief to everyone potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court.*" *Id.* at 852. The remedy for a successful APA challenge is limited to relief from the challenged agency action. The APA does not provide district courts "jurisdiction to order specific relief," including the award of grants. *Palisades Gen. Hosp., Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005); *accord* (1st Cir. 2016). "Thus, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at

an end: the case must be remanded to the agency for further action consistent with the correct legal standards.'" *Maine Med. Ctr. v. Burwell*, 841 F.3d 10, 16 (quoting *Cnty. of L.A. v. Shalala*, 192 F.3d 1004, 1011 (D.C. Cir. 1999)).

Accordingly, any relief should be limited to remanding and, if appropriate, vacating, improper agency action and must leave intact the Executive Branch's discretion to engage in further consideration of the topic at hand and consider other future agency actions consistent with law. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004) (explaining how the APA's limits on relief are intended to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements.").

Thus, the appropriate relief would be to remand to the agency so that HUD can revise the NOFO with lawful criteria and/or so that HUD can address any finding that it acted arbitrarily and capriciously and provide a more reasoned explanation of its actions. Plaintiffs additionally seek an order to compel Defendants to award the $75 million dollars available under the NOFO. Pls. Mem. at 42. For similar reasons as above, any order compelling agency action should be limited to remanding to the agency for further consideration. *See, e.g. Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) ("We do not hold, of course, that HUD is required to take this precise series of steps, nor do we suggest that the district court should issue an injunction to that effect. Appellants brought a complaint under the [APA] to set aside an unlawful agency action, and in such circumstances, it is the prerogative of the agency to decide in the first instance how best to provide relief."). Regardless, such affirmative relief is available only if Defendants have unlawfully withheld or unreasonably delayed action, and even there, the relief is limited to compelling that ministerial duty. 5 U.S.C. § 706(1). As discussed above, *supra* at 16-17, no unlawful withholding or unreasonable delay occurred here, and even if it did, Plaintiffs do not argue that the scope of the NOFO itself is so fixed that its terms admit no agency discretion. Thus, such relief is unavailable.

A permanent injunction, however, is improper. Such an injunction would constitute an extraordinary remedy in this case and the relief that Plaintiffs seek—that this Court "bar[ ]

Defendants from imposing the same or substantially similar criteria in the future"—is far too broad. Pls. Mem. at 41. *See Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 165-66 (2010) (explaining that "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.". So long as "a less drastic remedy" is available "recourse to the additional and extraordinary relief of an injunction" is not just unnecessary, it is inappropriate.).

Further, a permanent injunction barring Defendants from taking any "similar" action is vague and unreasonable. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 52 (2d. Cir. 1996) (vacating an injunction as vague and requiring that injunctions "be specific in terms" and "describe in reasonable detail . . . the acts or acts sought to be restrained."). It would also potentially (1) prevent the Defendants from curing any potential violation in the future, i.e., with additional explanation or after additional or different process and (2) sweep in other CoC awards unrelated to this case. *See* Prayer for Relief, Am. Compl. at 34. (injunction should apply to "any HUD CoC awards".).

Such relief goes beyond appropriate limits. *See, e.g.*, *New York v. Trump*, 769 F. Supp. 3d 119, 146 (D.R.I. 2025) ("The Court's order does not prevent the Defendants from making funding decisions in situations under the Executive's actual authority in the applicable statutory, regulatory, or grant terms[.]" (citation omitted)), *appeal filed*, No. 25-1236 (1st Cir. Mar. 10, 2025); *see also New York v. Trump*, 133 F.4th 51, 70 n.16 (1st Cir. 2025) (emphasizing that "the preliminary injunction clearly refers to a 'categorical pause or freeze of funding,' which, by its terms, could not apply to a pause or freeze based on an individualized determination under an agency's actual authority to pause such funds").

Further, any relief should at most enjoin only those conditions, or elements thereof, which can be read to require actions inconsistent with federal law. There can be no irreparable harm from a condition that requires an agreement to comply with federal law – since the Plaintiffs are already required by federal law to do so.

Beyond this, Plaintiffs' do not otherwise satisfy the requirements for permanent injunctive relief. Their claims of irreparable harm are essentially claims for loss of future funding and thus

speculative and economic harm.  In other words, they speculate that they will not—in the future—receive economic benefits in the form of government grants.  But such harms are generally not irreparable.  It is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  *See also Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) (irreparable injury must involve more than a "speculative forecast of anticipated harm.").

Moreover, any injunction interfering with the Executive's priorities is itself a substantial harm in the balance of the equities analysis.  For, "[a]ny time [the Government] is enjoined by a court from effectuating [laws], it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted).  To the extent the Court finds the balance of various factors close, this equities analysis should tip against an injunction.

And while—to be absolutely clear—the FY25 funds remain available for this NOFO pursuant to the TRO and Defendants are fully complying with the TRO and will continue to comply, Defendants reject the notion that the Court retains inherent equitable authority to preserve the appropriated CoC Builds funds for award past their expiration date.  The Court has no broad equitable authority to prevent appropriations from lapsing.  *See Goodluck v. Biden,* 104 F.4th 920, 928 (D.C. Cir. 2024) (criticizing older, contrary cases as belonging to the "'*ancien regime*' when courts took a much more freewheeling approach to the law of remedies."), *reh'g en banc denied*, No. 21-5263, 2024 WL 4092894 (D.C. Cir. Sep. 3, 2024).

Finally, to the extent that the Court determines that the challenged NOFO conditions require vacatur under the APA—and it should not—the Court need not, and therefore should not, reach any constitutional claims under principles of constitutional avoidance.  See *Harmon v. Brucker*, 355 U.S. 579, 581 (1958); see also *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

2.    **The Court may sever any conditions deemed improper and preserve the remainder of the NOFO**

As explained above the appropriate relief if the Court finds for Plaintiffs would be a remand to the agency.  In so doing, the Court need not set aside the entire NOFO.  Rather, any conditions deemed improper can be severed from the NOFO and the remainder preserved.  *See, e.g. K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988) (design of regulation is such that invalid subsection "is severable").

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Defendants and deny summary judgment to Plaintiffs.

Dated: December 4, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General, Civil Division*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

JOSEPH E. BORSON
*Assistant Branch Director*

/s/  *Joshua N. Schopf*
JOSHUA N. SCHOPF (D.C. Bar 465553)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 514-6304
Email: joshua.n.schopf@usdoj.gov

*Counsel for Defendants*