**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

NATIONAL ALLIANCE TO END
HOMELESSNESS, *et al.*,

       *Plaintiffs*,

v.

SCOTT TURNER, in his official capacity as
Secretary of the United States Department of
Housing and Urban Development, *et al.*,

       *Defendants*.

Case No. 25-cv-00447-MSM-AEM

**PLAINTIFFS' COMBINED REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 1

I.   The September 5 NOFO's New Criteria and process violate the APA .................................... 1

   A.   Plaintiffs' challenges to the September 5 NOFO are reviewable under the APA ............ 2

   B.   The Jurisdiction-Based Criteria are contrary to law ................................................. 3

   C.   The New Criteria exceed Defendants' statutory authority ........................................ 5

   D.   The New Criteria are arbitrary and capricious ....................................................... 7

   E.   The New Criteria are contrary to the Constitution .................................................. 11

   F.   The "Sex Binary" Criterion is contrary to law ...................................................... 12

   G.   The September 5 NOFO's truncated application period violates the APA ..................... 13

II.  The September 5 NOFO's New Criteria violate the Constitution ......................................... 13

   A.   The New Criteria violate the Spending Clause ...................................................... 14

   B.   The Jurisdiction-Based Criteria violate the Tenth Amendment .................................. 14

   C.   The New Criteria violate the Separation of Powers ................................................ 15

   D.   The "Sex Binary" Criterion violates the First Amendment ...................................... 17

III. In the alternative, the September 5 NOFO's new criteria and process are ultra vires ........... 17

IV.  Defendants have unlawfully withheld or unreasonably delayed awarding the CoC
     Builds funds ................................................................................................. 18

V.   The Court should enter Plaintiffs' requested relief .................................................... 19

   A.   The Court should declare unlawful, vacate, and set aside the September 5 NOFO ........ 20

   B.   The Court should permanently enjoin Defendants from imposing or implementing
        the New Criteria or any substantively similar criteria .......................................... 21

   C.   The Court should compel Defendants to award the $75 million in CoC Builds
        funding expeditiously, pursuant to lawful criteria and process ................................ 23

   D.   The Court should continue to preserve the appropriated funding pending
        Defendants' lawful award of those funds .......................................................... 23

CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Am. Acad. of Pediatrics v. FDA*, 330 F. Supp. 3d 657 (D. Mass. 2018) ................................18, 19

*Assiniboine & Sioux Trib. of Fort Peck Indian Rsrv. v. Bd. of Oil & Gas Conservation of State of Mont.*, 792 F.2d 782 (9th Cir. 1986).................................................................3

*Bond v. United States*, 564 U.S. 211, 220 (2011) ..........................................................14

*Child Trends, Inc. v. U.S. Dep't of Educ.*, 795 F. Supp. 3d 700 (D. Md. 2025)............................16

*City & Cnty. of S.F. v. Trump*, 783 F. Supp. 3d 1148 (N.D. Cal. 2025)....................................16

*City of Grants Pass, Or. v. Johnson*, 603 U.S. 520 (2024)...............................................10

*City of Houston v. HUD*, 24 F.3d 1421 (D.C. Cir. 1994) ..................................................

*Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921 (D.C. Cir. 1982)...............................22

*Corley v. United States*, 556 U.S. 303 (2009).............................................................6

*Dalton v. Specter*, 511 U.S. 462 (1994)...............................................................15, 16

*Dep't of Com. v. New York*, 588 U.S. 752 (2019)............................................................2

*Furtado v. Oberg*, 949 F.3d 56 (1st Cir. 2020)............................................................14

*Gundy v. United States*, 588 U.S. 128 (2019)..............................................................5

*Kennedy v. Allera*, 612 F.3d 261 (4th Cir. 2010)..........................................................4

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ...................................................................3

*Mass. v. Nat'l Insts. of Health*, 770 F. Supp. 3d 277 (D. Mass. 2025) .................................22

*MD/DC/DE Broad. Ass'n v. FCC*, 236 F.3d 13 (D.C. Cir. 2001) .............................................20

*Melone v. Coit*, 100 F.4th 21 (1st Cir. 2024) ............................................................8

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)................................................21

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)..........................................................................9, 11

*Nat'l Ass'n of Reg'l Councils v. Costle*, 564 F.2d 583 (D.C. Cir. 1977).................................19, 23

*Nat'l Fair Hous. All. v. HUD*, No. 25-1965, 2025 WL 2105567
    (D.D.C. July 28, 2025)...........................................................................................

*New York v. United States*, 505 U.S. 144 (1992)..........................................................5

*Nuclear Regul. Comm'n. v. Texas*, 605 U.S. 665 (2025)............................................17

*Oxfam Am., Inc. v. SEC*, 126 F. Supp. 3d 168 (D. Mass. 2015).................................

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981).............................14

*Rhode Island v. Trump*, 781 F. Supp. 3d 25 (D.R.I. 2025).......................................16

*South Dakota v. Dole*, 483 U.S. 203 (1987)...............................................................14

*Texas v. Cardona*, 743 F. Supp. 3d 824 (N.D. Tex. 2024).......................................21

*United States v. Christie Indus., Inc.*, 465 F.2d 1000 (3d Cir. 1972).......................21

*United States v. Johnson*, 632 F.3d 912 (5th Cir. 2011)..............................................4

*Webster v. Doe*, 486 U.S. 592 (1988).........................................................................2

*Wong v. Warden*, 171 F.3d 148 (2d Cir. 1999)...........................................................3

## STATUTES & REGULATIONS

5 U.S.C.:

    § 701................................................................................................................2

    § 706 ............................................................................................................23

34 U.S.C.:

    § 20912............................................................................................................4

    § 20914............................................................................................................4

    § 20927..........................................................................................................11

42 U.S.C.:

    § 11385............................................................................................................7

    § 11386............................................................................................................6

    § 11386a......................................................................................................2, 5

    § 12711..............................................................................................3, 4, 5, 17

§ 3545 ...................................................................................................2, 13

Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, div. L, tit. II, 136
Stat. 4459 (2022)..........................................................................................2, 6

## OTHER AUTHORITIES

Br. of Local Gov't Legal Ctr. *et al.* as Amici Curiae at 29, *City of Grants Pass, Or. v.
Johnson*, No. 23-175, 2024 WL 1008650 (U.S. filed Mar. 4, 2024) ...............................10

Community Solutions, *Atlanta Initiative Diverts People Experiencing Homelessness
from Criminal Justice System to Housing Solutions* (July 15, 2024),
https://perma.cc/88JC-7TJF ......................................................................................10

Dennis Culhane *et al.*, *How Much Would It Cost to Provide Housing First to All
Households Staying in Homeless Shelters?* at 7 (2025) .....................................10

HUD, FY 2025 Continuum of Care Competition and Youth Homeless Demonstration
Program Grants NOFO, https://perma.cc/7MSQ-5FHQ ...................................21

Nat'l Alliance to End Homelessness, *Housing-Focused Responses to Unsheltered
Homelessness: Spotlight on Atlanta, GA* (May 27, 2025),
https://perma.cc/2HC7-D3NG ....................................................................................10

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. II, § 3 ...................................................................................................16

## INTRODUCTION

On September 5, 2025, just weeks before the Department of Housing and Urban Development was required to award $75 million in appropriated funds for grants to build permanent supportive housing for homeless individuals and families, HUD issued a brand new notice of funding opportunity (NOFO). The new NOFO contained a host of new criteria that disqualified applicants based on the laws and public policies of the states and localities in which they are located, based on their views on gender, and based on their support for harm-reducing safe drug use activities wholly apart from any federally funded program. It established an unprecedented, and unrealistic, one-week application period. And it failed to make awards by the statutorily mandated September 30 deadline.

This was unlawful many times over. Defendants' opposition brief fails to effectively refute Plaintiffs' many independent arguments why the September 5 NOFO, and HUD's failure to lawfully award the funds by the statutory deadline, violated both the APA and the Constitution. The Court should grant summary judgment to Plaintiffs.

## ARGUMENT

### I.  The September 5 NOFO's New Criteria and process violate the APA

Contrary to Defendants' contentions, the September 5 NOFO's New Criteria and process must be set aside under the APA. *See* Defs.' Mem. i.s.o. Cross-Mot. for S.J. and in Opp. to Pls.' Mot. for S.J. (Defs.' Mem.) at 6-16. Plaintiffs' challenges are reviewable, and the NOFO violates the APA several times over. The Jurisdiction-Based Criteria are contrary to law; all the New Criteria exceed Defendants' statutory authority, are arbitrary and capricious, and violate the Constitution; the "Sex Binary" Criterion conflicts with multiple laws; and the NOFO's unprecedentedly short seven-day application period violates statutory requirements as well.

1

**A. Plaintiffs' challenges to the September 5 NOFO are reviewable under the APA**

At the outset, Defendants err in contending that "Plaintiffs' claims are precluded" because they challenge decisions "committed to agency discretion by law." Defs.' Mem. at 6 (capitalization altered). While APA review is not available "to the extent that … agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), the Supreme Court has emphasized that this is a "quite narrow" exception to the APA's strong "presumption of judicial review." *Dep't of Com. v. New York*, 588 U.S. 752, 771-772 (2019) (cleaned up). The exception applies only in those "rare instances" in which "a statute is drawn in such broad terms that … the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Webster v. Doe*, 486 U.S. 592, 599-600 (1988).

This is not such an instance. The statute governing the CoC program sets forth standards that cabin HUD's discretion in awarding grants—including by establishing criteria that HUD must consider, limiting the additional criteria HUD can consider, *id.* § 11386a(b)(1)(G), and requiring HUD to publish the criteria at least 30 days before any application deadline absent an emergency, *id.* § 3545(a). These provisions supply "meaningful standard[s]" for evaluating the criteria and process Defendants adopted here. *See Webster*, 486 U.S. at 600.

To the extent that Defendants mean to suggest that these standards for grants under "the broader CoC program" do not cabin HUD's discretion in awarding the funding specifically earmarked for CoC Builds awards, they are mistaken. Defs.' Mem. at 7. While the appropriation for the CoC Builds grants directs HUD to award the $75 million in dedicated funding "based on need and other factors to be determined by [HUD]," that provision cannot be read to give HUD unbounded and unreviewable discretion to award funds based on any factors it chooses. *See* Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, div. L, tit. II, 136 Stat. 4459,

5160 (2022). As Plaintiffs explained in their opening brief, such a reading would not only raise serious constitutional questions under the nondelegation doctrine but also entirely ignore the surrounding statutory context. Pls.' Mem. i.s.o. Mot. for S.J. (Pls.' Mem.) at 20-22. Defendants offer no response to those arguments.

Defendants attempt to liken this case to the agency decision found unreviewable in *Lincoln v. Vigil*, 508 U.S. 182 (1993), but that case is entirely inapposite. *See* Defs.' Mem. at 6-7. In *Lincoln*, the Court held that an agency had unreviewable discretion to decide how to allocate funds from a "lump-sum appropriation" where the statute did not "restrict[] what can be done with those funds." *Lincoln*, 508 U.S. at 192. Here, by contrast, the relevant statutes do restrict what can be done with the funds, including by prescribing detailed criteria Defendants must consider when awarding them.[1]

### B. The Jurisdiction-Based Criteria are contrary to law

As Plaintiffs explained in their opening brief (at 19-20), each of the Jurisdiction-Based Criteria violates the statutory provision barring HUD from "establish[ing] any criteria for allocating or denying funds … based on the adoption, continuation, or discontinuation by a jurisdiction of any public policy, regulation, or law" so long as the law or policy is within the jurisdiction's authority and "not in violation of any Federal law," 42 U.S.C. § 12711. Defendants offer two (cursory) responses, but both are unavailing.

---

[1] Even Defendants acknowledge (at 7) that the Court can review whether "a specific statutory restriction" applies—and thus effectively concede that the Court can review Plaintiffs' contrary to law claims. The "committed to agency discretion" exception to judicial review likewise categorically cannot preclude review of Plaintiffs' statutory authority and constitutional claims. *See Assiniboine & Sioux Trib. of Fort Peck Indian Rsrv. v. Bd. of Oil & Gas Conservation of State of Mont.*, 792 F.2d 782, 791-92 (9th Cir. 1986) (noting that courts have "widely held" that statutory authority claims are not precluded); *Wong v. Warden*, 171 F.3d 148, 149 (2d Cir. 1999) ("It is well-established that judicial review exists over allegations of constitutional violations even when the agency decisions underlying the allegations are discretionary.").

First, contrary to Defendants' contention (at 10-11), there can be no serious dispute that the Jurisdiction-Based Criteria—which disqualify applicants if their project is located in a jurisdiction that does not have or enforce particular laws and policies—are "based on" whether jurisdictions have adopted those laws and public policies. To resist this straightforward conclusion, Defendants merely assert, without explanation, that the Jurisdiction-Based Criteria are actually "based on carrying on the CoC program efficiently and effectively." Defs.' Mem. at 10-11. That is a non sequitur. Even if the Jurisdiction-Based Criteria did help carry out the program efficiently and effectively (they do not, as explained below), that would not change the fact that the criteria actually turn on jurisdictions' adoption of particular laws and policies— precisely what § 12711 forbids.

Second, there is likewise no basis for Defendants' contention (at 11) that the Jurisdiction-Based Criteria are permissible because § 12711 only bars criteria based on jurisdictions' adoption of laws and policies that are "not in violation of any Federal law." It is unclear exactly what Defendants mean, but to the extent they mean to suggest that it is "in violation of … Federal law" for a state or locality not to have and enforce the types of laws covered by the Jurisdiction-Based Criteria, they are again mistaken. Tellingly, Defendants do not point to any federal statute that states and localities would purportedly violate by not having such laws and policies in place.[2] Indeed, no federal statute *could* require states and localities to adopt such laws,

---

[2] Defendants claim (at 11 n.5) that SORNA requires states to maintain a sex offender registry that tracks the residences of sex offenders. *See* 34 U.S.C. §§ 20912(a), 20914. That is wrong. Consistent with constitutional limits on Congress's authority, "SORNA does not require the States to comply with its directives." *United States v. Johnson*, 632 F.3d 912, 920 (5th Cir. 2011) (emphasis omitted); *accord, e.g.*, *Kennedy v. Allera*, 612 F.3d 261, 269 (4th Cir. 2010). And if Defendants mean to suggest that the policies that the Jurisdiction-Based Criteria require would reinforce requirements of federal laws, that is irrelevant because a state or locality does not violate federal law by failing to adopt such policies.

as that would be unconstitutional. *See New York v. United States*, 505 U.S. 144, 162 (1992) (explaining that Congress lacks authority to "require the States to govern according to Congress' instruction"). Thus, Defendants cannot claim that states and localities violate federal law by failing to adopt the various laws and policies at issue and that § 12711 accordingly permits HUD to base grant decisions on states' and localities' adoption of those policies.

### C. The New Criteria exceed Defendants' statutory authority

The New Criteria also exceed Defendants' statutory authority. In contending otherwise, Defendants appear to make two sets of arguments—(1) that the statute grants them nearly plenary authority to establish criteria, and (2) that the New Criteria are an appropriate exercise of HUD's authority to establish criteria to carry out the CoC program in "an effective and efficient manner." *See* Defs.' Mem. at 7-10. Both are incorrect.

As to the first, the statute does not support Defendants' oblique suggestion (at 7, 8) that HUD has virtually unbounded authority to establish the criteria for awarding CoC Builds grants. Defendants point to two statutory provisions—42 U.S.C. § 11386a(a) and the act appropriating the funding for these awards—but neither grants HUD unbounded authority. Start with 42 U.S.C. § 11386a(a), which requires HUD to award funds through a national competition "based on criteria established by the Secretary." This provision cannot be read "in a vacuum," *Gundy v. United States*, 588 U.S. 128, 141 (2019) (cleaned up)—and so cannot be read to grant HUD limitless discretion to adopt any criteria it chooses. The subsection that immediately follows states that "[t]he criteria established under subsection (a) shall include" several enumerated factors, plus "such other factors as the Secretary determines to be appropriate to carry out this part in an effective and efficient manner." 42 U.S.C. § 11386a(b). That authorization for HUD to establish additional criteria "to carry out" the program "in an effective and efficient manner"

would be wholly superfluous if 42 U.S.C. § 11386a(a) authorized HUD to establish any criteria regardless of whether they served efficacy and efficiency. Under basic canons of construction, § 11386a(a) should not be read to create that superfluity. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining that it is "one of the most basic interpretive canons[] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (cleaned up)).

The relevant appropriations act—which directs HUD to award the $75 million in dedicated funding "based on need and other factors to be determined by [HUD]," Consolidated Appropriations Act of 2023, 136 Stat. at 5160—likewise does not grant HUD plenary authority, for the reasons Plaintiffs explained in their opening brief. *See* Pls.' Mem. at 20-22. Defendants offer no response to Plaintiffs' arguments on that point.

Defendants fare no better with their second argument—that the New Criteria are authorized under § 11386a(b)(8), which empowers HUD to establish criteria to carry out the CoC program in "an effective and efficient manner," 42 U.S.C. § 11386a(b)(8).[3] The New Criteria do nothing to help carry out the CoC program effectively and efficiently—and Defendants barely bother trying to explain how they do. Instead, Defendants baldly assert that the criteria "are directed at ensuring that grant dollars are not used for purposes inconsistent with the program's goals." Defs.' Mem. at 10; *see also id.* at 8. But, to begin, the New Criteria have nothing to do with how grant dollars are used. The Jurisdiction-Based Criteria disqualify applicants based on the laws and policies of the states and localities in which their proposed

---

[3] Defendants also point (at 8) to another provision that similarly authorizes HUD to require applicants to agree to such "terms and conditions as the Secretary may establish to carry out this part in an effective and efficient manner." 42 U.S.C. § 11386(b)(8). But this provision does not authorize the New Criteria for the same reason that § 11386a(b)(8) does not: The New Criteria have nothing to do with the "effective[ness]" or "efficien[cy]" of the CoC program.

projects are based, not based on what the applicant would do with grant funds. Similarly, the Applicant-Based Criteria specifically look to the applicant's activities outside the scope of the grant program—namely, whether "the applicant" conducts "harm reduction" activities and whether "the applicant" has or will "deny the sex binary in humans or promote the notion that sex is a chosen or immutable characteristic." AR 2140, 2145, 2147-48 (NOFO at 25, 30, 32-33).

Nor do the New Criteria otherwise help serve the CoC program's goals effectively and efficiently. Defendants claim (at 10) that reducing public camping and loitering, public drug use, and urban squatting advance the CoC program's goals of "reducing the trauma caused by homelessness and promoting self-sufficiency." Putting aside the fact that the statute specifically bars these criteria that turn on whether states have adopted particular preferred policies, Defendants do not explain how withholding funding from organizations in states and localities with particular policies serves those goals. Defendants emphasize (at 9) that the statute permits them to adopt "substantive conditions that implicate policy choices," but that is beside the point. The statute permits such policy-based criteria only where they advance the effectiveness and efficiency of the program, and the New Criteria do not satisfy that standard.[4]

Defendants lack statutory authority to adopt any of the New Criteria, and the September 5 NOFO must be set aside for that reason alone.

**D. The New Criteria are arbitrary and capricious**

The New Criteria are also arbitrary and capricious for all the reasons Plaintiffs explained in their opening brief. *See* Pls.' Mem. at 22-25. Defendants do not even respond to many of

---

[4] Defendants also state (at 10 n.4) that the statute "contemplate[s] some of the [New Criteria]" because it authorizes awardees to use funds to "provid[e] security arrangements necessary for the protection of residents" and to "provid[e] other appropriate services," 42 U.S.C. § 11385(c). It is unclear how that authorization to provide security arrangements in any way suggests that any of the New Criteria are appropriate—and Defendants do not explain how it does.

Plaintiffs' arguments on this front—that the New Criteria "have not been explained at all" and that Defendants failed to consider a host of important aspects of the problem, including evidence of what strategies are successful in combatting homelessness, the detrimental impact of the criteria on communities, any alternative more limited policy change, the difficulty applicants face in determining whether they meet the vaguely worded criteria, or the impossibility applicants would face in meeting the "Sex Binary" Criterion without violating federal law. *See* Pls.' Mem. at 22-25. The Court can set aside the New Criteria as arbitrary and capricious for those reasons alone.

In their brief, Defendants attempt to offer reasoned explanations for some (but not all) of the new Criteria, but their attempts fall flat. *See* Defs.' Mem. at 12 (arguing that "[n]early all" of the NOFO's New Criteria serve certain permissible purposes). As an initial matter, the justifications that Defendants proffer find no support in the administrative record,[5] but rather are post hoc rationalizations offered only now, in the context of litigation. Under "a bedrock principle of administrative law," this is insufficient. *Melone v. Coit*, 100 F.4th 21, 31 (1st Cir. 2024). In reviewing agency action, a court "may consider only the agency's explanation given at the time the relevant decision was made, as opposed to its post hoc rationale." *Id.*

At any rate, even if they were not post hoc, Defendants' rationales would still fall short. Defendants claim (at 12) that the "criteria focused on illegal drug use"—the Drug Enforcement Jurisdiction-Based Criterion and the Safe Drug Use Applicant-Based Criterion—"are aimed at reducing addiction and overdose deaths." But they do not explain how withholding funding from

---

[5] Apart from a string of citations Defendants offer to show that they sought legal review of the NOFO, Defendants' discussion of the arbitrary-and-capricious claim remarkably cites only two pages of the administrative record. *See* Defs.' Mem. at 11-14. Those two pages, moreover, do not contain any actual explanation for the NOFO's criteria. *See* AR 1337, 1423.

organizations that operate in jurisdictions that do not enforce prohibitions on public illicit drug use to HUD's preferred extent (as the Drug Enforcement Jurisdiction-Based Criterion does) helps reduce addiction or overdose deaths, nor do they explain how barring applicants from permitting drug use on their property or engaging in harm reduction activities (as the Safe Drug Use Criterion does) serve those goals. Indeed, a provider with firsthand experience contacted HUD with concerns that the Safe Drug Use Criterion's prohibition on "permit[ting]" drug use on the applicant's property would cause providers to push drug use onto surrounding sidewalks (to the neighborhoods' detriment) or to avoid serving individuals with substance use problems altogether. AR 1424-25. Rather than address those concerns, HUD responded with a non sequitur—that there had been an increase in overdose deaths in the provider's city—and suggested the criterion's language was out of its hands, as it had "come[] directly from" the Homelessness E.O. AR 1423. Defendants fail to "examine the relevant data and articulate … a rational connection between the facts found and the choice made," a basic requirement of reasoned decisionmaking. *See Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Defendants' belated attempt to justify the jurisdiction-based criteria that focus on urban camping, loitering, and squatting suffer from similar flaws. Defendants point (at 12) to various "negative externalities" of public camping, but withholding funds from organizations that would build permanent supportive housing in jurisdictions that do not aggressively enforce camping bans would do nothing to mitigate those externalities. Defendants also claim that people in encampments often reject "offers to stay in shelters" and so "HUD could reasonably conclude" that funds "would effectively reach more homeless individuals if applicants resided in jurisdictions that prohibit public camping." *See* Defs.' Mem. at 12. This, too, fails to articulate a

"rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. For one, Defendants' cited evidence shows only that some people in encampments will not accept a spot in a *shelter*—congregate settings where people lack privacy and not uncommonly face threats to their safety. *See* Defs.' Mem. at 12 (citing *City of Grants Pass, Or. v. Johnson*, 603 U.S. 520, 529-31 (2024)). The evidence that Defendants (indirectly) cite in fact shows that, "[i]n contrast to offers of temporary shelter, offers for more permanent options … are almost always accepted." Br. of Local Gov't Legal Ctr. *et al.* as Amici Curiae at 29, *City of Grants Pass, Or. v. Johnson*, No. 23-175, 2024 WL 1008650 (U.S. filed Mar. 4, 2024). In addition, Defendants offer no reason to believe that permanent supportive housing units will be undersubscribed in jurisdictions that do not aggressively enforce camping bans. Quite the contrary, the demand for permanent supportive housing far exceeds the available supply, even in areas without vigorous anti-camping enforcement. *See, e.g.*, Dennis Culhane *et al.*, *How Much Would It Cost to Provide Housing First to All Households Staying in Homeless Shelters?* at 7 (2025); *see also* Nat'l Alliance to End Homelessness, *Housing-Focused Responses to Unsheltered Homelessness: Spotlight on Atlanta, GA* (May 27, 2025), https://perma.cc/2HC7-D3NG (describing insufficient housing capacity); Community Solutions, *Atlanta Initiative Diverts People Experiencing Homelessness from Criminal Justice System to Housing Solutions* (July 15, 2024), https://perma.cc/88JC-7TJF (noting that city's police minimize arrests for public camping).

As for the SORNA Jurisdiction-Based Criterion, Defendants now claim (at 12-13) that this ensures that funds "are not used to house those who violate federal law and to ensure the safety of residents at permanent supportive housing facilities." But Defendants do not explain how blacklisting organizations based on their states' and localities' implementation of SORNA is

reasonably tailored to keeping residents in congregate settings safe from sex offenders. Defendants also claim (at 12-13) that the criterion ensures that funds go only to "jurisdictions that comply with this federal law." But, as noted above (at 4 n.2), SORNA does not—and constitutionally could not—require states to implement SORNA. Instead, Congress provided that states could either substantially implement SORNA or lose 10 percent of the criminal justice funding they would otherwise receive under a major federal grant program. 34 U.S.C. § 20927(a). By attempting to impose additional financial consequences beyond what Congress itself imposed, HUD both strayed beyond its authority and arbitrarily and capriciously "relied on factors which Congress had not intended it to consider," *State Farm*, 463 U.S. at 43.

Defendants' justification for the Immigration Enforcement Jurisdiction-Based Criterion fares no better. Defendants claim (at 13) that this criterion (1) "merely requires compliance with federal law" and (2) helps ensure that funds do not support undocumented immigrants who are not eligible for public benefits. But applicants have no control over whether their state or locality cooperates with federal immigration enforcement, so this criterion cannot ensure anyone's "compliance with federal law." And no federal law requires states or localities to cooperate with immigration enforcement in any event (as that would violate the Tenth Amendment). As for Defendants' (speculative) claim that the Immigration Enforcement Criterion will keep HUD-funded housing from ineligible immigrants, that "relie[s] on factors which Congress has not intended [HUD] to consider," *State Farm*, 463 U.S. at 43. Congress directed HUD to address homelessness through the CoC program, not to boost enforcement of laws limiting undocumented immigrants' access to federally funded benefits.

**E.  The New Criteria are contrary to the Constitution**

The New Criteria are also contrary to the Constitution, as explained in Plaintiffs' opening

brief and further below. Defendants offer no reason why, if the New Criteria violate the Constitution, they should not be set aside under the APA. *See* Defs.' Mem. at 14.

**F.  The "Sex Binary" Criterion is contrary to law**

Defendants decline to defend the "Sex Binary" Criterion insofar as it "may be read to apply to grantee actions beyond the scope of federal funding," but "reserve all rights" to adopt "future iterations" of the criterion.[6] Defs.' Mem. at 15. The Court should make clear now that Defendants cannot re-adopt a "Sex Binary" Criterion that is limited to grantees' actions within the scope of the federal program. As Plaintiffs explained in their opening brief (at 25-26), requiring grantees to treat sex as binary and immutable is contrary to multiple laws that recognize, and prohibit discrimination on the basis of, gender identity—regardless of whether the requirement only applies to the grantee's use of grant funds.

Defendants are mistaken in suggesting (at 15) that whether HUD could properly require grantees to adopt a "sex binary" view within the scope of their funded programs is "not before this Court." For one, Defendants have not actually conceded that the existing "Sex Binary" Criterion applies beyond the scope of the funded program, and instead say only that it "may be read" that way. *See* Defs.' Mem. at 15. The Court should make clear that, however the Criterion is read—as applying beyond the scope of the federally funded program or only within it—it is contrary to law. Second, the Sex Binary Criterion violates the FHA, Title VII, and HUD regulations regardless of whether the Criterion applies within or outside the scope of the funded

---

[6] Defendants' refusal to defend the "Sex Binary" Criterion as promulgated precludes entry of summary judgment for Defendants. The inclusion of that unlawful Criterion tainted the competition by disqualifying—and deterring—applications on improper grounds. Defendants therefore categorically cannot lawfully make awards under the September 5 NOFO, as summary judgment for Defendants would permit them to do. Defendants' cross-motion for summary judgment should be denied on that basis alone.

program. The analysis is the same regardless of whether the criterion applies beyond or only within the scope of the funded program, and there is no reason for the Court to artificially limit its discussion.

### G. The September 5 NOFO's truncated application period violates the APA.

The September 5 NOFO also violates the statutory requirement that absent "an emergency," HUD publish the criteria for making awards at least 30 days before the application deadline, 42 U.S.C. § 3545(a)(3), (5). In contending otherwise, Defendants principally emphasize (at 15-16) that HUD "followed the[] procedures" for waiving that 30-day requirement because it published its reasons for the waiver as the statute requires. But this misses the point. The point is that there was no emergency justifying waiver of the 30-day requirement in the first place.

On that point, Defendants merely reiterate (at 15-16) that it was "necessary" to shorten the application period to "rework the NOFOs consistent with the new executive orders" before the appropriation expired. But Plaintiffs already explained that this self-inflicted "emergency" cannot justify shortening the application period, and that an executive order cannot excuse an agency from complying with statutory requirements. Pls.' Mem. at 26-27. Defendants offer no response to those arguments.

## II.  The September 5 NOFO's New Criteria violate the Constitution

The New Criteria also violate the Constitution several times over: They violate the Spending Clause, the Tenth Amendment, and various provisions safeguarding the separation of powers, and the "Sex Binary Criterion" violates the First Amendment.

### A. The New Criteria violate the Spending Clause

As Plaintiffs explained in their opening brief (at 31-32), the New Criteria violate the Spending Clause for three reasons: (1) they are ambiguous and therefore do not allow recipients to "exercise their choice knowingly," *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); (2) at least some are "unrelated to the federal interest in particular national projects or programs," *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (cleaned up); and (3) the Jurisdiction-Based Criteria are unduly coercive. In response, Defendants entirely fail to engage with these arguments. *See* Defs.' Mem. at 18-19. Instead, they argue only (1) that the conditions are within the scope of Defendants' statutory authority and (2) that they have not withheld any funds. Defs.' Mem. at 18-19. This is non-responsive. Defendants have therefore effectively conceded Plaintiffs' Spending Clause claim. *Cf. Furtado v. Oberg*, 949 F.3d 56, 59 (1st Cir. 2020) (holding that courts may treat a party's failure "to respond to a properly raised argument for summary judgment as waiver").

### B. The Jurisdiction-Based Criteria violate the Tenth Amendment

As Plaintiffs explained in their opening brief (at 32-34), the Jurisdiction-Based Criteria also violate the Tenth Amendment by effectively coercing states to adopt the Administration's preferred policies. Defendants' principal response is that Plaintiffs "are not states or localities" so have "limited" standing to raise a Tenth Amendment challenge. *See* Defs.' Mem. at 21. This ignores binding Supreme Court precedent. As the Supreme Court has made clear, "[f]idelity to principles of federalism is not for the States alone to vindicate," and private parties, too, can challenge federal government action that "has interfered with state sovereignty in violation of the Tenth Amendment." *Bond v. United States*, 564 U.S. 211, 220, 222 (2011). Ordinary standing and other justiciability rules apply, but so long as there is a "justiciable case or controversy," a

party can assert an injury that "results from disregard of the federal structure of our Government." *Id.* at 225-26. And, here, there can be no serious dispute that Plaintiffs—who the New Criteria disqualify from consideration for federal funding—have Article III standing and otherwise present a justiciable case or controversy. Indeed, Defendants have not argued otherwise.

On the merits, Defendants do no more than baldly assert (at 21-22) that "there is no coercion" because "plaintiffs may decline to apply for the grants." This misses Plaintiffs' point—that the Jurisdiction-Based Criteria are coercive (1) because they are part of a far-reaching campaign by the Administration to withhold not just these grants, but significant amounts of federal funding, from jurisdictions that do not adopt the Administration's preferred policies; and (2) because it punishes organizations within the jurisdictions, not just the jurisdictions themselves. Defendants offer no rebuttal to these points.

### C.  The New Criteria violate the Separation of Powers

The New Criteria also violate multiple constitutional provisions safeguarding the separation of powers. In adopting them, Defendants have ignored the constraints Congress placed on awarding these funds—and the executive branch has therefore impinged on Congress's powers under the legislative vesting clause, Appropriations Clause, and Spending Clause; improperly attempted to amend the governing statutes in violation of the Bicameralism and Presentment Clause; and violated the duty to "take care" that the laws be faithfully executed. *See* Pls.' Mem. at 28-30.

Defendants' principal response (at 17-18) is that these separation-of-powers claims are foreclosed by *Dalton v. Specter*, 511 U.S. 462, 472 (1994), which holds that executive actions that exceed statutory authority are not "ipso facto in violation of the Constitution." But *Dalton*

also recognizes that it violates the Constitution for the executive to act based on "the President's inherent constitutional power as the Executive" when it in fact has no such power. *See Dalton*, 511 U.S. at 473. To the extent that Defendants claim they have adopted the conditions or shortened the application period because the executive orders required them to, they apparently rely on some claimed executive power to take those actions, notwithstanding the dictates of the statute. The executive branch has no such power, and its attempt to impose criteria and truncate the application process contrary to congressional directives violates the separation of powers.[7]

Defendants' other arguments are likewise unavailing. They claim (at 19) that the Presentment Clause is not implicated because the President has not "repeal[ed] or amend[ed] parts of duly enacted statutes." But he effectively has by prompting HUD to adopt criteria, and shorten the application period, contrary to what duly enacted statutes require. Defendants also claim (at 20) that courts simply cannot review whether the President is complying with the constitutional command that he "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3. That, however, ignores the case law reviewing just those sorts of claims. *See, e.g.*, *Rhode Island v. Trump*, 781 F. Supp. 3d 25, 51-52 (D.R.I. 2025); *Child Trends, Inc. v. U.S. Dep't of Educ.*, 795 F. Supp. 3d 700, 725 (D. Md. 2025); *City & Cnty. of S.F. v. Trump*, 783 F. Supp. 3d 1148, 1190 (N.D. Cal. 2025). And none of the cases Defendants cite (at 20-21) in fact hold that such claims are nonjusticiable. Insofar as Defendants imposed the New Criteria and the shortened application timeline to comply with executive orders, rather than the statute, they have violated the separation of powers.

---

[7] To the extent that Defendants' arguments regarding *Dalton* are meant to reach Plaintiffs' separate Spending Clause claim as well, they also fail. Plaintiffs' Spending Clause claim is based on Defendants' improper use of the spending power to impose conditions, not the theory that Defendants' actions outside the scope of their statutory authority are also "ipso facto in violation of the Constitution." *Dalton*, 511 U.S. at 472.

### D. The "Sex Binary" Criterion violates the First Amendment

The "Sex Binary" Criterion violates the First Amendment for all the reasons explained in Plaintiffs' opening brief. Pls.' Mem. at 34-36. Defendants expressly decline to defend this criterion on the merits "to the extent" it "can be read" to restrict applicants' views "outside the context of federal funding." Defs.' Mem. at 22. As Plaintiffs explained (at 34-36), however, the Criterion also violates the First Amendment even if it is read to restrict applicant's conduct and views only in the context of the federally funded program. Given that Defendants have left open the possibility that the existing criterion can be read to apply only within the scope of the funded program, the Court should hold now that that, too, is unconstitutional.

## III. In the alternative, the September 5 NOFO's new criteria and process are ultra vires

If for some reason review under Plaintiffs' other claims were not available, the Court should grant Plaintiffs summary judgment on their ultra vires claim. Defendants object (at 22) that ultra vires review is unavailable here "because the APA provides an available route to a remedy." Plaintiffs agree.

But if APA review were somehow foreclosed, relief under the ultra vires doctrine would be warranted. Defendants point out (at 22) that ultra vires review applies "only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *Nuclear Regul. Comm'n. v. Texas*, 605 U.S. 665, 681 (2025) (cleaned up). Nearly every one of the New Criteria is ultra vires under this standard. The Jurisdiction-Based Criteria all violate 42 U.S.C. § 12711's specific prohibition on using criteria based on states' and localities' public policies, and the "Sex Binary" Criterion violates various anti-discrimination laws that require recognition and respect of (non-binary) gender identity. *See supra* sections I.B, I.F.

IV. **Defendants have unlawfully withheld or unreasonably delayed awarding the CoC Builds funds**

Plaintiffs are also entitled to summary judgment on their claim that Defendants unlawfully withheld or unreasonably delayed agency action by failing to award CoC Builds funding before the appropriation was set to expire on September 30, 2025. Defendants object (at 16-17) that they "were poised to" award the funds by the deadline, but this litigation (a) stopped them and (b) effectively extended the deadline by preserving the funds. There are at least five problems with these arguments.

First, Defendants' statutory obligation—and the action they have unlawfully withheld and unreasonably delayed—was to award the funds pursuant to lawful criteria and process. They were not poised to do that.

Second, this litigation did not block Defendants from meeting their statutory deadline. This Court's TRO barred Defendants from making awards under the unlawful September 5 NOFO, but nothing prevents them from making awards under the prior NOFO that Plaintiffs do not challenge. *See* Order ¶ 2 (ECF No. 18).

Third, Defendants cannot credibly claim that they did not unreasonably delay awarding the funds when they waited until the last minute to launch a whole new process.

Fourth, the fact that an agency attempts to take action by a statutory deadline does not immunize it from an order compelling agency action unlawfully withheld or delayed. For example, in *Am. Acad. of Pediatrics v. FDA*, the court compelled an agency to issue a rule that had been "unlawfully withheld" even though the agency had, in fact, issued a rule by the statutory deadline but the rule was later vacated. 330 F. Supp. 3d 657, 663-64 (D. Mass. 2018). It did not matter that the agency had attempted to comply "in a timely fashion." *Id.* at 664. As the court explained, relief was warranted because "the statute and deadlines set forth by Congress

continue to apply." *Id.* Intervening action by a court did not "free[]" the agency "from Congressional mandates" or enable it to take the action "at whatever pace it chooses." *Id.*; *see also Oxfam Am., Inc. v. SEC*, 126 F. Supp. 3d 168, 172 (D. Mass. 2015) (holding that agency had "unlawfully withheld" agency action where agency had promulgated a rule that was later vacated, and explaining that agency could not "take inadequate action" and thereby "forever relieve itself of the obligations mandated by Congress"). By the same token, here, Congress set a September 30, 2025 deadline to obligate the funds, and this Court's TRO does not "negate" Defendant's "continuing obligation to comply," *Am. Acad. of Pediatrics*, 330 F. Supp. 3d at 664.

Finally, by suspending the statutory lapse provision so that the $75 million in CoC Builds funding remains available, this Court's TRO did not extend Defendants' deadline to comply. Congress established a September 30 deadline, and Defendants failed to meet it. This Court's TRO did not change the deadline Congress established; it merely extended the availability of the funding so as "to protect [its] ability" to grant effective relief at the end of the case. *See Nat'l Ass'n of Reg'l Councils v. Costle*, 564 F.2d 583, 588 (D.C. Cir. 1977). That effective relief includes compelling Defendants to award the now-overdue funds. Indeed, without an order compelling Defendants to award the funds, it is unclear how the Court could continue to preserve the funds, as preserving them would no longer be necessary to protect the Court's ability to grant any pending request for relief.

## V. The Court should enter Plaintiffs' requested relief

In their motion for summary judgment, Plaintiffs requested four types of relief:

(1) an order declaring unlawful, vacating, and setting aside the September 5 NOFO, the New Criteria, and the one-week application period;

(2) a permanent injunction barring Defendants (and certain others) from imposing or implementing the New Criteria, or any substantively similar criteria, on any HUD CoC Builds awards in any manner;

19

(3) an order compelling Defendants to award expeditiously, pursuant to lawful criteria and process, the $75 million that Congress appropriated for one-time awards under the CoC program for permanent supportive housing; and

(4) an order continuing to preserve the appropriated CoC Builds funds for award pending Defendants' compliance with the Court's order requiring lawful award of the funds.

Pls.' Mot. for S.J. at 1-2 (ECF No. 26). Contrary to Defendants' contentions (at 23-27), those remedies are all proper and warranted here.

### A. The Court should declare unlawful, vacate, and set aside the September 5 NOFO

Defendants appear to generally agree that "vacating improper agency action" is appropriate, but send mixed messages on whether they think the Court should "remand to the agency" to revise the NOFO or should "sever" the problematic portions of the NOFO while leaving "the remainder" intact. *Compare* Defs.' Mem. at 24, *with id.* at 27. Vacating and remanding the NOFO in full is appropriate here, particularly given that it is unclear how severance would work. In all events, Defendants would have to run a new competition because the inclusion of the unlawful criteria tainted the competition by deterring qualified applicants—so the Court could not just let stand the same NOFO with certain criteria excised. In addition, one of the improper portions of the NOFO is the abbreviated seven-day application period, and severing that would leave no application deadline at all. Severance is not appropriate in such circumstances, where "the remainder" of the agency action could not "function sensibly without the stricken provision." *MD/DC/DE Broad. Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001).

Vacating the NOFO in full would leave at least two options open to the agency. It could issue a new NOFO without the problematic criteria and with a new, lawful application period—and expeditiously make awards. Or—more efficiently—it could award funds pursuant to the May 2025 NOFO that Defendants already issued, that no one has challenged, and under which Defendants have already received and reviewed applications and selected awardees.

20

**B. The Court should permanently enjoin Defendants from imposing or implementing the New Criteria or any substantively similar criteria**

In addition to vacating the September 5 NOFO, this Court should also permanently enjoin Defendants from imposing or implementing the New Criteria, or substantially similar criteria, for any CoC Builds awards. Defendants resist this relief on four grounds, but all are meritless.

First, Defendants object that an injunction is not warranted where "'a less drastic remedy' is available." Defs.' Mem. at 25 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 165-66 (2010)). But Plaintiffs already explained in their opening brief (at 41-42) that the less drastic remedy of vacatur is not sufficient here because that would leave Defendants free to take similar action again "as an end-run to the Court's relief." *Texas v. Cardona*, 743 F. Supp. 3d 824, 897 (N.D. Tex. 2024). Defendants offer no response to that point. And the need for injunctive relief has only become more apparent in the time since Plaintiffs filed their motion—as Defendants have since issued another NOFO for other CoC funding that included many of the same criteria that the Court had already found likely unlawful in this case. *See* HUD, FY 2025 Continuum of Care Competition and Youth Homeless Demonstration Program Grants NOFO, at 55, 65, 86-87, https://perma.cc/7MSQ-5FHQ (including Camping Enforcement, Drug Enforcement, Involuntary Commitment, and SORNA Jurisdiction-Based Criteria, as well as "Sex Binary" Criterion); *see also* Declaration of Bryan W. Horn ¶ 3, *Nat'l All. to End Homelessness v. HUD*, No. 25-cv-636 (ECF No. 45-3) (declaration from HUD official explaining that HUD then withdrew that new NOFO in response to litigation challenging it).

Second, Defendants object (at 25) to barring Defendants from imposing "similar" criteria in a future NOFO, but their objections are baseless. Defendants claim that this is too "vague," but the basis for the injunction makes clear what "mischief … the injunction seeks to prevent," *United States v. Christie Indus., Inc.*, 465 F.2d 1000, 1007 (3d Cir. 1972). *See also Common*

*Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 927 (D.C. Cir. 1982) (noting that "the context of the litigation" can make an injunction's language "sufficiently specific"). Defendants also err in suggesting (at 25) that the injunction would "unreasonabl[y]" (Defs.' Mem. at 25) (1) prevent Defendants from curing the violation by providing additional explanation or undertaking a different process or (2) extend to other CoC awards. No additional explanation or process would enable Defendants to impose criteria like these again because Defendants lack authority to do so and most criteria outright conflict with governing statutes. And while it would likely be reasonable to extend the injunction to other CoC awards, Plaintiffs have only asked for the Court to enjoin Defendants from imposing criteria like these on CoC Builds awards. *See* Pls.' Mot. For S.J. at 1(ECF No. 26).

Third, contrary to Defendants' contention (at 42) that no injunction is warranted because Plaintiffs have not established irreparable harm, Plaintiffs have established such harm—the loss of the opportunity to compete for funding. *See* Pls.' Mem. at 42. Defendants argue (at 25-26) that "economic loss" alone is not irreparable harm, but that is not the harm that Plaintiffs claim.[8]

Fourth, Defendants suggest (at 26) that, if the balance of equities is otherwise "close," the fact that the injunction would "interfere[e] with the Executive's priorities" should tip the scales against an injunction. But the equities are not otherwise close and, in any event, "the government cannot suffer harm from an injunction that merely ends an unlawful practice." *Massachusetts v. Nat'l Insts. of Health*, 770 F. Supp. 3d 277, 326 (D. Mass. 2025) (cleaned up), *appeal pending*, No. 25-1344.

---

[8] Defendants also cryptically assert (at 25) that "[t]here can be no irreparable harm from a condition that requires an agreement to comply with federal law." But none of the challenged criteria merely require applicants to comply with the federal law, and Defendants have not attempted to explain how any do.

**C. The Court should compel Defendants to award the $75 million in CoC Builds funding expeditiously, pursuant to lawful criteria and process**

Under 5 U.S.C. § 706(a), the Court should also compel Defendants to take the action it has unlawfully withheld and unreasonably delayed—to award the $75 million in CoC Builds funding expeditiously, pursuant to lawful criteria and process. Defendants contend (at 24) that "such relief is unavailable," but their basis for that contention is unclear. To the extent that Defendants mean to suggest that the Court should not prescribe the specific criteria and process Defendants must use, that is a red herring, as Plaintiffs have not requested any such order.

**D. The Court should continue to preserve the appropriated funding pending Defendants' lawful award of those funds**

The Court should also continue to exercise its equitable authority to suspend the lapse of the appropriated funding pending Defendants' lawful award of those funds. Defendants contend in passing (at 26) that the Court lacks authority to do so, but that ignores established case law recognizing that very authority. *See, e.g.*, *City of Houston v. HUD*, 24 F.3d 1421, 1426 (D.C. Cir. 1994); *Nat'l Ass'n of Reg'l Councils v. Costle*, 564 F.2d 583, 588 (D.C. Cir. 1977). Indeed, in another case, the government recently conceded that the longstanding precedent had not been overturned. *Nat'l Fair Hous. All. v. HUD*, No. 25-1965, 2025 WL 2105567, at *12 n.4 (D.D.C. July 28, 2025) (noting government concession).

## CONCLUSION

The Court should grant summary judgment to Plaintiffs and deny Defendants' cross-motion for summary judgment.

December 19, 2025                    Respectfully submitted,

                                     */s/ Kristin Bateman*
                                     Kristin Bateman (D.C. No. 90037068)^
                                     Yenisey Rodriguez (D.C Bar No. 1600574)^
                                     Kristen Miller (D.C. Bar No. 229627)^

Robin F. Thurston (D.C. Bar No. 1531399)[^]
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
kbateman@democracyforward.org
yenisey.rodriguez@democracyforward.org
consultantkmiller@democracyforward.org
rthurston@democracyforward.org

Amy R. Romero (RI Bar # 8262)
Kevin Love Hubbard (MA Bar #704772)[^]
DeLuca, Weizenbaum, Barry & Revens, Ltd.
199 North Main Street
Providence, RI 02903
(401) 453-1500
Amy@dwbrlaw.com
Kevin@dwbrlaw.com
Cooperating counsel, Lawyers' Committee for RI

Antonia K. Fasanelli (DC Bar No. 481856)[^]
National Homelessness Law Center
1400 16th Street, NW, Suite 425
Washington, DC  20036
(202) 638-2535
afasanelli@homelesslaw.org

Lynette Labinger (RI Bar No. 1645)
128 Dorrance St., Box 710
Providence, RI 02903
(401) 465-9565
ll@labingerlaw.com
Cooperating counsel, ACLU Foundation of RI

*Counsel for Plaintiffs*

[^] Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2025, I electronically filed the within document, and it is available for viewing and downloading from the Court's CM/ECF System, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system.

/s/ *Kristin Bateman*
Kristin Bateman