# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

NATIONAL ALLIANCE TO END
HOMELESSNESS, *et. al.*,

     *Plaintiffs*,

*v.*            Case No. 25-447-MSM-AEM

SCOTT TURNER, *et al.*,

     *Defendants*.

## **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 1

I.     Plaintiffs' Claims Are Subject To Agency Discretion And Thus Are
Foreclosed ........................................................................................... 1

II.    Defendants Acted Lawfully Under the APA ........................................ 3

      A.    The September 5 NOFO Criteria are Not Contrary to Law ...................... 3

      B.    Defendants Acted Consistent With Statutory Authority ............................ 4

      C.    HUD Acted Reasonably And Its Decisions Were Not Arbitrary Or
Capricious ........................................................................................ 6

      D.    Constitutional Claims ........................................................................ 9

      E.    The Waiver Of The 30-Day Notice And Application Period Was
Validly Exercised. ............................................................................. 9

III.   Plaintiffs' Constitutional Claims Remain Foreclosed: ...................... 10

      A.    Spending Clause: ............................................................................. 10

      B.    Tenth Amendment ........................................................................... 12

      C.    Separation of Powers ...................................................................... 13

IV.   Ultra Vires Review Is Foreclosed ..................................................... 14

V.    No Funds Under the September 5 NOFO Have Been Unreasonably Delayed
Or Unlawfully Withheld ................................................................... 15

VI.   Plaintiffs Requested Relief Goes Beyond Appropriate Limits ........... 17

      A.    Remand To The Agency Is The Only Proper Relief, If Any ................... 17

      B.    A Permanent Injunction Remains Unwarranted ....................................... 19

      C.    The Court Cannot Compel Defendants To Award NOFO Funding
To Plaintiffs Or Anyone Else .......................................................... 21

CONCLUSION ......................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**

*American Academy of Pediatrics v. FDA*,
    330 F. Supp. 3d 657 (D. Mass. 2018) .................................................................. 16, 17

*Atieh v. Riordan*,
    797 F.3d 135 (1st Cir. 2015) .................................................................................. 6

*Bennett v. Ky. Dep't of Educ.*,
    470 U.S. 656 (1985) ................................................................................................11

*City of Grants Pass v. Johnson*,
    603 U.S. 520 (2024) ................................................................................................ 7

*Clifford v. Pena*,
    77 F.3d 1414 (D.C. Cir. 1996) ............................................................................. 6

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
    603 U.S. 799 (2024) ............................................................................................... 18

*Dalton v. Spector*,
    511 U.S. 462 (1994) ............................................................................................. 10, 13

*Davis v. Elmira Sav. Bank*,
    161 U.S. 275 (1896) ............................................................................................... 4

*Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*,
    18 F.4th 38 (1st Cir. 2021) .................................................................................... 21

*Env't Def. Ctr. v. U.S. EPA*,
    344 F.3d 832 (9th Cir. 2003) ................................................................................11

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ................................................................................................ 6

*Fed. Express Corp. v. U.S. Dep't of Com.*,
    39 F.4th 756 (D.C. Cir. 2022) .............................................................................. 15

*Florida v. Cardona*,
    752 F. Supp. 3d 1320 (S.D. Fla. 2024) ................................................................. 12

ii

*Goodluck v. Biden*,
104 F.4th 920 (D.C. Cir. 2024), *reh'g en banc denied*, No. 21-5263, 2024 WL 4092894
(D.C. Cir. Sep. 3, 2024) ............................................................................................. 22

*Heckler v. Chaney*,
470 U.S. 821 (1985) ..................................................................................................... 2

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ....................................................................................................... 4

*In re Barr Lab'ys, Inc.*,
930 F.2d 72 (D.C. Cir. 1991) ..................................................................................... 17

*K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281 (1988) ................................................................................................... 18

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ................................................................................................ 2, 3

*Madison v. Virginia*,
474 F.3d 118 (4th Cir. 2006) ..................................................................................... 12

*Maryland v. King*,
567 U.S. 1301 (2012) ................................................................................................. 21

*Massey v. Stanley-Bostitch, Inc.*,
255 F. Supp. 2d 7 (D.R.I. 2003) ................................................................................... 5

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ................................................................................................... 19

*Nat. Res. Def. Council, Inc. v. EPA*,
194 F.3d 130 (D.C. Cir. 1999) ..................................................................................... 6

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, ("NFIB"),
567 U.S. 519 (2012) .............................................................................................11, 12

*New Life Evangelistic Ctr., Inc. v. Sebelius*,
753 F. Supp. 2d 103 (D.D.C. 2010) .......................................................................... 5, 7

*New York v. United States*,
505 U.S. 144 (1992) ...................................................................................................11

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) ................................................................................................... 14

*Olivares v. Transp. Sec. Admin.*,
  819 F.3d 454 (D.C. Cir. 2016) ........................................................................ 6

*Penobscot Valley Hosp. v. Carranza*,
  620 B.R. 1 (D. Me. 2020) ............................................................................... 7

*River St. Donuts LLC v. Napolitano*,
  558 F.3d 111 (1st Cir. 2009) ....................................................................... 6, 7

*Seafarers Int'l Union of N. Am. v. United States*,
  891 F. Supp. 641 (D.D.C. 1995) .................................................................... 6

*Sierra Club v. EPA*,
  353 F.3d 976 (D.C. Cir. 2004) ...................................................................... 6

*South Dakota v. Dole*,
  483 U.S. 203 (1987) ..................................................................................... 11

*Taylor v. U.S. Dep't of Lab.*,
  440 F.3d 1 (1st Cir. 2005) ............................................................................. 2

*Towns of Wellesley, Concord, & Norwood v. FERC*,
  829 F.2d 275 (1st Cir. 1987) ....................................................................... 17

*United States v. Richardson*,
  754 F.3d 1143 (9th Cir. 2014) ................................................................. 8, 13

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
  778 F. Supp. 3d 440 (D.R.I. 2025) .............................................................. 10

**Statutes**

5 U.S.C. § 706 ................................................................................... 15, 16, 22

8 U.S.C. §§ 1601-1646 ............................................................................... 20

42 U.S.C. § 11386a ............................................................................. *passim*

42 U.S.C. § 12711 ................................................................................. 1, 3, 14

Consolidated Appropriations Act of 2023,
  Pub. L. No. 117-328, 126 Stat. 4459 ............................................................ 2

**Executive Orders**

Exec. Order No. 14321, *Ending Crime and Disorder on America's Streets,* 90 Fed. Reg. 35817 (July 29, 2025) ............................................................................................ 14

Exec. Order No. 14218,  *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 25, 2025) ............................................................................................ 20

**Other Authorities**

FY 2024-2025 CoC NOFO, FR-6800-N-25 .................................................................... 12

FY 2025 CoC NOFO, FR-6901-N-25.................................................................... 12, 20

## INTRODUCTION

Defendants' actions in issuing the Department of Housing and Urban Development ("HUD")'s September 5, 2025 Notice of Funding Opportunity ("September 5 NOFO"), were consistent with the APA and other applicable statutes. As Defendants explained (1) the statutes governing the NOFO provide broad discretion to the Secretary of HUD to award grants based on criteria established by the Secretary. Defendants acted consistently within this statutory discretion when attaching the challenged NOFO criteria; (2) no violation of 42 U.S.C. § 12711 occurred as HUD's criteria are not based on changing jurisdiction's laws or policies; (3) Defendants' actions were not arbitrary and capricious as the NOFO conditions, focusing on public safety, cooperation with law enforcement and prohibitions on illegal drug use, are sufficiently related to the funding goals of self-sufficiency and reduction of trauma; (4) Plaintiffs' unlawful withholding or unreasonable delay claim is not viable; (5) Plaintiffs' constitutional claims are largely precluded as attempts to turn APA claims into constitutional ones and are otherwise meritless: and (6) the appropriate remedy, should the Court find for Plaintiffs, is, at most, vacatur and a remand to the agency to take future action consistent with its lawful authority.

Nothing in Plaintiffs' reply brief alters these conclusions. For all these reasons, the Court should grant summary judgment to Defendants and deny summary judgment to Plaintiffs.

## ARGUMENT

### I.     Plaintiffs' Claims Are Subject To Agency Discretion And Thus Are Foreclosed

Plaintiffs' claims are precluded because they seek to challenge decisions quintessentially "committed to agency discretion by law". Defs' Mem. in Supp. of Cross-Motion for S.J. and in Opp. to Pls.' Mot. For S.J. (Defs. Mem.) at 6-7, ECF No. 28-1. Plaintiffs respond that APA

review remains available here as, *inter alia*, this case is not governed by the paradigm established in *Lincoln v. Vigil*, 508 U.S. 182 (1993). Plaintiff's Combined Reply in Support of Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment, ("Pls. Rep.") at 3, ECF No. 29. But *Vigil* stands for the proposition that the "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion." *Vigil*, 508 U.S. at 192. This appropriation, although contained in a specific line-item, is part of a larger lump-sum. *See* Defs. Mem at 6-7.

Moreover, as Plaintiffs acknowledge, Pls. Rep. at 2, this specific grant's appropriation expressly affords HUD wide discretion in administering the grant, "based on need and other factors to be determined by [HUD]." Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, 126 Stat. 4459, 5160. So too does the authorizing statute. 42 U.S.C. § 11386a(b)(1)(G) (HUD may make award determinations based on "such other factors as [HUD] determines to be appropriate to carry out this part in an effective and efficient manner"). Such broad language exudes deference to the agency on which criteria "best fits the agency's overall policies." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *see also Taylor v. U.S. Dep't of Lab.*, 440 F.3d 1, 9 (1st Cir. 2005) (noting that agency action is "presumptively unreviewable" when a court has "'no meaningful standard against which to judge the agency's exercise of discretion.'" (quoting *Heckler,* 470 U.S. at 830).

To be sure, as Plaintiffs note (and as Defendants acknowledge), there are other, specific standards that are applicable to this NOFO, and HUD's compliance with those standards is reviewable. *See* 42 U.S.C. § 11386a(b)(1). But apart from those standards, Congress has not otherwise provided applicable standards. Rather, the authority for the challenged criteria is the sort of broadly prescribed authority envisioned by *Vigil*. Pub. L. No. 117-328, 126 Stat. at 5158-

61 (the CoC Builds grants are to be awarded "based on need and other factors to be determined by [HUD]"); 42 U.S.C. § 11386a(b)(1)(G).

In other words, HUD's decisions on grant conditions reflect how to "meet its statutory responsibilities in what it sees as the most effective or desirable way." *Vigil*, 508 U.S. at 192. Such decisions are committed to HUD's discretion and therefore unreviewable under Section 701(a)(2) of the APA. *Id.* at 193 (explaining that as long as the agency abides by its legal obligations, the APA "gives the courts no leave to intrude" via arbitrary and capricious review).

## II.    Defendants Acted Lawfully Under the APA

### A.    The September 5 NOFO Criteria are Not Contrary to Law

HUD acted consistent with its statutory authority and the law in issuing the September 5 NOFO. Defs. Mem. at 7-11. Plaintiffs now claim that there can be "no serious dispute" that the NOFO's "jurisdiction-based" criteria violated 42 U.S.C. § 12711 as these criteria are based on "whether jurisdictions have adopted those laws and public policies." Pls. Rep. at 4. But just saying so does not make the Defendants' claims correct. Rather, as Defendants stated in our opening brief, HUD's criteria are not "*based*" on compelling jurisdictions to take a particular action such as adopting or discontinuing "any public policy, regulation or law…". *Id.* at 3. Rather, they are based on carrying out the Continuum of Care (CoC) program efficiently and effectively by, *inter alia*, promoting recovery, protecting public safety and cooperating with federal law enforcement to promote the safety of permanent supportive housing residents. Defs. Mem. at 10-11. Plaintiffs say nothing in their reply other than to disagree with Defendants' interpretation.

Plaintiffs also argue that the federal government can never force states to adopt specific federal laws. Pls. Rep. at 4-5. But state laws or policies can violate federal law, or § 12711's

3

language excluding from its requirements any law or policy "not in violation of any Federal law" would have no meaning.  *See also Hines v. Davidowitz,* 312 U.S. 52, 67 (1941) (explaining that state laws cannot "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."; *Davis v. Elmira Sav. Bank*, 161 U.S. 275, 283 (1896) (holding state laws invalid if they "either frustrate[] the purpose of the national legislation or impair[] the efficiency of th[o]se agencies of the federal government to discharge the duties, for the performance of which they were created.").

### B.    Defendants Acted Consistent With Statutory Authority

Plaintiffs also mischaracterize Defendants statutory authority arguments.  Defendants did not and are not arguing that the statute grants HUD "plenary authority" to establish any criteria it chooses.  Pls. Rep. at 5.  Rather, as Defendants actually stated in our opening brief, both 42 U.S.C. § 11386a, governing the overall CoC program, and the appropriations statute providing the funding for the September 5 NOFO provide the authority for HUD to act in the manner it did here.  *See* Defs. Mem. at 7-10.  The language in those provisions indicates broad deference to the agency's and the Secretary's choices as to establishing criteria for awarding the CoC Builds grant. *See id.*

Plaintiffs' repeat their arguments (Pls. Rep. at 5) that 42 U.S.C. § 11386a, which allows HUD to award grants "based on criteria established by the Secretary" cannot be read "in a vacuum," and must be read together with—and limited by—the language of 42 U.S.C. § 11386a(b) that requires HUD to include several enumerated factors plus other factors the "Secretary determines to be appropriate to carry out this part in an effective and efficient manner."  42 U.S.C. § 11386a(b)(1)(G).  Thus, according to Plaintiffs, any added factors must serve to carry out the program effectively and efficiently.  Pls. Rep. at 5-6.

4

But even assuming that the general provisions of the HUD statutes can be read in such a limiting way, the criteria added by HUD are both sufficiently related to the conditions required in section 11386a(b) and are designed to enhance the program's efficiency and effectiveness. *See id.* at 10-11.

For instance, criteria focused on reducing public camping and loitering, public drug use, and urban squatting, etc., are tied to the purposes of the program – reducing the trauma caused by homelessness and promoting self-sufficiency – and fit comfortably within the Secretary's discretion. Defs. Mem. at 11. Plaintiffs argue that such criteria do not serve to carry out the program's goals effectively and efficiently, Pls. Rep. at 7, while accusing the Defendants of not properly explaining how the criteria meet those goals. *Id.* But Plaintiffs merely assert, without evidence, that Defendants' choices do not "advance the effectiveness and efficiency of the program…" *Id.* Plaintiffs are not entitled to substitute their judgment for that of the Defendants, who are the ones charged with carrying out the CoC Builds program in an effective and efficient manner. *See, e.g., New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 133 (D.D.C. 2010) ("[W]hile New Life may understandably disagree with HHS' determination, mere disagreement cannot discharge its burden of establishing that the determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."); *See also Massey v. Stanley-Bostitch, Inc.,* 255 F. Supp. 2d 7, 11 (D.R.I. 2003) (Court must uphold administrator's reasonable decision "[e]ven if the court disagrees with the decision, or if the employee offers a competing reasonable interpretation…").


**C.    HUD Acted Reasonably And Its Decisions Were Not Arbitrary Or Capricious**

Plaintiffs accuse Defendants of not responding to many of their "arbitrary and capricious" arguments as if, even if true (which it is not), that itself is proof of arbitrary and capricious agency action. Pls. Rep. at 7-8.[1] But as Defendants' stated in our opening brief, "[t]he APA's arbitrary-and-capricious standard requires" only that an "agency action be reasonable," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) and that the action "meets a minimum rationality standard." *Sierra Club v. EPA*, 353 F.3d 976, 978-79 (D.C. Cir. 2004) (quoting *Nat. Res. Def. Council, Inc. v. EPA,* 194 F.3d 130, 136 (D.C. Cir. 1999)); *see also Atieh v. Riordan*, 797 F.3d 135, 138 (1st Cir. 2015) (noting narrowness of arbitrary-and-capricious standard and that "a reviewing court 'may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions.'" (quoting *River St. Donuts LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009).

Defendants satisfy this standard. Defs. Mem. at 11-14. Plaintiffs now argue that all of Defendants justifications are mere "post-hoc rationalizations" that the Court cannot consider. Pls.' Rep. at 8. This is false. Defendants may provide a discussion of their rationale that illuminates "'reasons obscured but implicit in the administrative record.'" *Clifford v. Pena*, 77 F.3d 1414, 1418 (D.C. Cir. 1996) (quoting *Seafarers Int'l Union of N. Am. v. United States*, 891 F. Supp. 641, 647 (D.D.C. 1995), *aff'd*, 77 F.3d 1414 (D.C. Cir. 1996)), and that helps to "furnish[] an explanation of the administrative action that is necessary to facilitate effective judicial review." (citation omitted)); *Olivares v. Transp. Sec. Admin.,* 819 F.3d 454, 464 (D.C.

---

[1] Plaintiffs again suggest that the September 5 NOFO institutes unreasonable policy changes. Pls. Rep. at 8. But the May NOFO made changes to the January 2024 NOFO. And the September 5 NOFO made changes to the May NOFO. This is standard practice and changes to longstanding agency practices. *See* Defs. Mem. at 14.

Cir. 2016); *see also Penobscot Valley Hosp. v. Carranza,* 620 B.R. 1, 4 (D. Me. 2020) (citing *Olivares*).

This is what Defendants have done here. *See* Defs. Mem. at 11-14. For instance, on illegal drug use, the record reflects that such conditions are aimed at reducing addiction and overdose deaths among the homeless population moving into permanent supportive housing. *See* AR at 1423. And other conditions are related to public safety, cooperation with law enforcement, the promotion of self-sufficiency or addiction recovery. *See, e.g.*, AR at 1337. It is neither arbitrary nor capricious to ensure that localities will uphold public safety, enforce drug prohibitions, or cooperate with law enforcement, in the context of providing this NOFO funding. *See* Defs. Mem. at 11-12.

Plaintiffs offer some other arguments attempting to refute Defendants' rationale. None suffice. For instance, Plaintiffs seem to argue that HUD's criteria seeking to enforce drug prohibitions are deficient because, among other things, a "provider with firsthand experience" questioned HUD's rationale. Pls. Rep. at 9. But such disputes amount to a mere disagreement as to the efficacy of HUD's choices, not evidence of unreasonableness. *See, e.g., New Life*, 753 F. Supp. 2d at 133; *River Street Donuts,* 558 F.3d at 114 (court "may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions.").

Plaintiffs question Defendants' linkage of public camping with the homelessness crisis with claims that *City of Grants Pass v. Johnson*, 603 U.S. 520 (2024) does not support Defendants arguments. Pls. Rep. at 10. But the main point of *City of Grant Pass* was to illustrate the concept that public camping has a deleterious effect on public safety and on the homeless population. *Johnson*, 603 U.S. at 529-31 (noting reports that "the exponential increase in encampments in recent years has resulted in an increase in crimes both against the homeless

7

and by the homeless;" encampments provide "dependable access to illegal drugs;" and they contribute to rampant disease among the homeless due to poor sanitation.).  Plaintiffs do not challenge these points.  Again, the fact that some commentators cited by Plaintiffs offer alternative views about public camping and homelessness, Pls. Rep. at 10, and might make different choices does not invalidate Defendants' choices or make them unreasonable.

As for the SORNA criteria, Plaintiffs continue to perpetuate the notion that Defendants are "blacklisting organizations" based on states or localities' SORNA (or other criteria) implementation.  *Id.*  But Defendants are not blacklisting anyone and the NOFO criteria are not so designed.  Rather, the SORNA criteria are focused on protecting public safety, as the NOFO itself states. AR at 2145.  Further, courts have rejected the notion that SORNA violates state and local rights.  *See, e.g., United States v. Richardson*, 754 F.3d 1143, 1146–47 (9th Cir. 2014) ("we join every other court of appeals that has considered the question in holding that SORNA does not violate the Tenth Amendment's anti-commandeering principle and adopt the other circuits' reasoning for doing so.").

Similarly, the criteria that Plaintiffs label the "Immigration Enforcement Criterion", Pls. Rep. at 11, involves merely complying with federal law.  Defs. Mem. at 13.  Plaintiffs accuse Defendants of relying on factors Congress did not intend the agency to consider.  Pls. Rep. at 13.  But HUD could reasonably conclude that limiting funds to jurisdictions that comply with federal law regarding illegal immigrants would better support the members of the homeless population who are eligible for housing under the September 5 NOFO.  And illegal immigrants, with limited exceptions, are not eligible for the housing provided by CoC Builds grants. Defs. Mem. at 13.  Such factors comfortably fall within 42 U.S.C. § 11386a(b)(1)(G)'s catch-all provision.  (HUD

Secretary may establish criteria to carry out the CoC program in "an effective and efficient manner.").

       **D.**    **Constitutional Claims**: As in their opening brief, Plaintiffs present no independent APA-specific argument as to why Defendants' actions violate the APA. Thus, Defendants address these arguments *infra* at 10-14. *See also* Defs. Mem. at 17-22. [2]

       **E.**    **The Waiver Of The 30-Day Notice And Application Period Was Validly Exercised**.

       Plaintiffs flatly assert that no emergency existed that qualified for a waiver of the notice and application period. Pls. Rep. at 13. But Plaintiffs' assertion does not determine what constitutes an emergency. The fact remains that an emergency did exist – funds were set to expire at the end of FY 2025 and HUD had a very short window to rework the NOFO consistent with the administration's policy priorities. *See* Defs. Mem. at 15-16. Plaintiffs need not accept this rationale for the agency's actions to qualify under the waiver provisions.

       Further, the agency did not treat the administration's executive orders as a "blank check," to do anything it wanted, contrary to Plaintiffs' claims. Pls.' Mem. in Supp. of Mot. for Summ. J., ("Pls.' Mem.") at 27, ECF No. 27 (citation omitted). Nor did the agency ignore statutory requirements because of any executive order. *Id.*; Pls. Rep. at 13. Rather, HUD followed the statutory waiver procedures to the letter. As the statute allows, the Secretary waived the thirty-day notice period before the publication of the NOFO. The Secretary then published his notice of waiver, stating the agency's rationale, in the federal register on October 2, 2025, within thirty

---

[2] Plaintiffs continue to assert their arguments about the "sex binary criterion". Pls. Rep. at 12, 17. Defendants reiterate that we are not defending this provision here for the reasons expressed in our opening brief. Defs. Mem. at 15, 22. Thus, none of Plaintiffs' additional arguments in their reply are relevant or require further discussion.

days after September 5 and as mandated by law.  Defs. Mem. at 15-16.

And cases cited by the Plaintiffs are inapt.  *See, e.g. Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 471 (D.R.I. 2025) (finding that relying purely on an executive order was insufficient rationale to freeze funding for already awarded grants), *appeal filed*, No. 25-1428 (1st Cir. May 1, 2025).  Here, HUD did not use an executive order as an excuse to ignore the law or as an excuse to freeze funds.  Rather, HUD worked expeditiously to ensure that funds could be awarded prior to any lapse in appropriations and followed all statutory waiver procedures in so doing.  Thus, Defendants did not violate any required procedures and did not violate the APA.

III.     **Plaintiffs' Constitutional Claims Remain Foreclosed:**

Nothing that Plaintiffs state in their reply alters the fact that Plaintiffs' constitutional claims remain unviable for the reasons stated in Defendants' opening brief.  Defs. Mem. at 17-22.  We discuss additional arguments raised by Plaintiffs below:

A.     **Spending Clause:**

Plaintiffs argue that Defendants failed to address any of their spending clause arguments and thus have conceded Plaintiffs' claim.  Pls. Rep. at 14.  This is false.  Defendants addressed Plaintiffs' arguments by explaining in our opening brief that Defendants cannot violate the Spending Clause if their actions are within their statutory authority.  Both the statutes and the appropriating language establish HUD's authority to develop factors for determining the grant awards.  Thus, while Plaintiffs may bring an APA claim to dispute the correct interpretation of the statutes and the scope of the agency's authority to issue new conditions, no basis exists for a constitutional claim on these facts under *Dalton* and its progeny.  *See Dalton v. Spector*, 511 U.S. 462, 473 (1994).

Further, Plaintiffs assume that Spending Clause doctrine requires Congress to set out by statute every requirement of a grant program for the requirement to be enforceable, lest an agency be accused of imposing "ambiguous" criteria. Pls. Mem. at 31; Pls. Rep. at 14. Such is not the case. *See, e.g., Bennett v. Ky. Dep't of Educ.,* 470 U.S. 656, 669 (1985) (stating that Congress cannot "prospectively resolve every possible ambiguity concerning particular applications of the requirements").

Plaintiffs also contend that the "jurisdiction-based" criteria" are improperly "coercive". Pls. Rep. at 14. But the Supreme Court has explained that, even where the Federal Government may not be able to *compel* applicants to do a particular activity, it may *encourage* States and municipalities to implement federal regulatory programs. *See New York v. United States*, 505 U.S. 144, 149 (1992). Thus, the Federal Government can, constitutionally, use conditions on federal funds to "induce the States to adopt policies that the Federal Government itself could not impose." *Nat'l Fed'n of Indep. Bus. v. Sebelius ("NFIB")*, 567 U.S. 519, 537 (2012). It may, for example, make certain federal funds available only to localities that enact a given regulatory regime. *South Dakota v. Dole*, 483 U.S. 203, 205-08 (1987) (upholding federal statute conditioning state receipt of federal highway funds on state adoption of minimum drinking age of twenty-one). "[A]s long as the alternative to implementing a federal regulatory program does not offend the Constitution's guarantees of federalism, the fact that the alternative is difficult, expensive or otherwise unappealing is insufficient to establish a Tenth Amendment violation." *Env't Def. Ctr. v. U.S. EPA,* 344 F.3d 832, 847 (9th Cir. 2003) (citation omitted). The key is whether the financial inducement is "so coercive as to pass the point at which pressure turns into compulsion." *Dole*, 483 U.S. at 211 (citation omitted).

That line is nowhere close to being crossed here.  At most, a state or locality, or private applicants within certain states or localities, will not qualify for this CoC Builds award opportunity. And to put this grant into context, this one-time CoC Builds grant of $75 million is about 2% the size of the annually recurring CoC grant of nearly $4 billion.  *Compare* CoC Builds NOFO, FR-6902-N-25A, at 5, AR 2120 (stating that the CoC Builds grant "provides $75,000,000 for competitive one-time grants") *with* FY 2024-2025 CoC NOFO, FR-6800-N-25, at 33 ("Funding of approximately $3,524,000,000 is available through this NOFO.") *and* FY 2025 CoC NOFO, FR-6901-N-25, at 7 ("Funding of approximately $3,918,000,000 is available through this NOFO.") (currently enjoined).

This contrasts with the type of case where federal government funding conditions will veer into the coercive, such as in *NFIB*, 567 U.S. at 581 (threatened loss of all Medicaid funds, which was approximately 20 percent of the average state's total, to induce the states to further expand their Medicaid program was unlawfully coercive.).  The grant programs at issue in this case pale in comparison to the potential loss of Medicaid funding.  Thus, the conditions here fall in the range of standard inducements considered acceptable in *Dole*, rather than the threat of losing a massive funding stream such as the case of all Medicaid funds considered in *NFIB*.  *See also Madison v. Virginia,* 474 F.3d 118, 128-29 (4th Cir. 2006) (conditioning use of federal correctional funds on upholding of RLUIPA was not unconstitutionally coercive as state was free to decline such funding amounting to a small part of its budget); *Florida v. Cardona*, 752 F. Supp. 3d 1320, 1339 (S.D. Fla. 2024) (holding that Higher Education Act's requirement that State's postsecondary institutions would not be able to receive federal student aid funds without following certain conditions did not violate the Spending Clause as, *inter alia,* such conditions only impacted "eligibility for a *future* source of funding") *appeal filed*, No. 24-13814 (11th Cir. Nov. 20, 2024).

B.     **Tenth Amendment**

Plaintiffs continue to argue that the September NOFO's criteria coerces "states to adopt the Administration's preferred policies' and thus violates the Tenth Amendment.  Pls. Rep. at 14.  But there is no coercion here since plaintiffs may decline to apply for the grants to which any alleged offensive conditions are attached, nor is there any commandeering or encroachment on any state's sovereignty.  Defs. Mem. at 21-22.  Additionally, as discussed immediately above, *supra* at 11-12, no line into coerciveness has been crossed here.  *See also Richardson*, 754 F.3d at 1146–47 (agreeing with all other circuit courts in holding that SORNA does not violate the Tenth Amendment's anti-commandeering principle).

Plaintiffs now argue that none of that matters, as the NOFO conditions are part of a wide-ranging coercive "campaign by the Administration to withhold not just these grants, but significant amounts of federal funding" beyond these grants.  Pls. Rep. at 15.  But apart from the fact that Plaintiffs' claims are wholly speculative, the only funding relevant to Plaintiffs' Tenth Amendment claims is the funding at issue in this case.  Plaintiffs offer no authority for the proposition that a self-labeled "campaign" involving multiple programs, multiple authorities, and multiple agencies is an analytically relevant category for their constitutional claim, and it is not.

C.     **Separation of Powers**

All of Plaintiffs' separation of powers claims are foreclosed by *Dalton,* 511 U.S. at 473.  Plaintiffs seek to counter the *Dalton* argument by stating that even under *Dalton* when an agency acts under a "claimed executive power" that does not exist it violates the Constitution.  Pls. Rep. at 16.  But Defendants do not make such a claim.  Rather, Defendants argue that their actions here are consistent with statutory authority.  Thus, standard *Dalton* analysis applies:  Plaintiffs cannot bring freestanding constitutional claims that are statutory in nature.  Since

Plaintiffs' separation of powers claims are, at heart, arguing that Defendants have not acted consistent with their statutory obligations, such claims remain untenable under *Dalton*.  *See* Defs. Mem. at 17-21.

Plaintiffs' arguments on the Presentment Clause and the Take Care Clause fare no better. On the Presentment Clause, as Defendants explained in our opening brief, Defendants are not amending any statutes governing the CoC Builds grant program but acting consistent with Congressional direction set out in those statutes.  Defs. Mem. at 19.  Nor is the President "effectively" repealing or amending any statutes by prompting HUD to violate its statutory duties.  Pls. Rep. at 16.  HUD has not violated any statutory duties.[3]

As for the Take Care Clause, that Clause generally does not allow a Plaintiff to challenge the way the President executes Congress's laws.  *See* Defs. Mem. at 20-21.  And Plaintiffs do not address Defendants' argument that the Take Care Clause relates only to Presidential activity; it does not speak to the actions of subordinate Executive branch officials.  *Id.* at 21.  Regardless, no violation of the Take Care Clause occurred here because HUD followed the law.

**IV.     Ultra Vires Review Is Foreclosed**

Plaintiffs maintain that if APA review is unavailable, they can still get relief under the ultra vires doctrine.  Pls. Rep. at 17.  Plaintiffs acknowledge that, regardless, ultra vires review applies "only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition*' in a statute."  *Nuclear Regul. Comm'n v. Texas,* 605 U.S. 665, 681 (2025) ("NRC") (citation omitted); Pls. Rep. at 17.  Plaintiffs then refer to 42 U.S.C § 12711

---

[3] Regardless, it defies logic to claim that the executive orders here amount to a statutory repeal or amendment since each EO states that its provisions are operative only to the extent "permitted by law". *See, e.g.,* Exec. Order No. 14321*, Ending Crime and Disorder on America's Streets,* 90 Fed. Reg. 35817 (July 29, 2025).

to assert that Defendants' have taken such action.  Pls.' Rep. at 17. As discussed, *supra* at 3-4,

Defendants dispute that any violation of that statute exists, let alone a violation of a specific

prohibition within that statute and further disputes that HUD has acted "*entirely* 'in excess of its

delegated powers…." *NRC*, 605 U.S at 681. (emphasis added).  Regardless, ultra vires review

fails, as Plaintiffs' have not met the "demanding standard" where "[t]he agency overstep must be

'plain on the record and on the face of the [statute].' " *Fed. Express Corp. v. U.S. Dep't of Com.*,

39 F.4th 756, 765 (D.C. Cir. 2022) (citation omitted).  *See also* Defs. Mem. at 23.

## V.    No Funds Under the September 5 NOFO Have Been Unreasonably Delayed Or Unlawfully Withheld

Plaintiffs are not entitled to relief based on an unlawfully withheld or unreasonably delayed

claim as any such delay or withholding was of the Plaintiffs' own making in initiating this

litigation.  Defs. Mem. at 16-17.

Plaintiffs now claim that regardless of this context Defendants still violate 5 U.S.C. §

706(1) for several reasons.  None of these arguments are availing.  Plaintiffs claim that Defendants

violated their statutory obligation to award funds pursuant to lawful criteria and process.  Pls. Rep.

at 18.  But this argument is simply a generalized APA argument that Defendants acted unlawfully

and is duplicative of Plaintiff's arguments under § 706(2).  This is not an unlawfully withheld or

unreasonably delayed argument at all, but a claim that Defendants acted contrary to law.

Plaintiffs' other arguments amount to preferences for how Defendants should act, not

proof of unreasonable delay or unlawful withholding.  Plaintiffs argue that nothing prevents

HUD from making awards under a prior NOFO.  *Id.*  But any prior NOFOs, including the May

2025 NOFO, were rescinded, as HUD is entitled to do.  HUD issued the September 5 NOFO in a

manner designed to meet statutory deadlines.  That is what is relevant here.  HUD has no

obligation to reinstate a rescinded NOFO to satisfy Plaintiffs interpretation of the requirements of § 706(1).

Plaintiffs further claim that HUD waited "until the last minute to launch a whole new process" thus creating unnecessary delay. *Id.* But as explained in our opening brief, HUD issued the September 5 NOFO the earliest it could and in a manner designed to issue awards prior to the end of the fiscal year and the expiration of the congressional appropriation. Thus, there was no unnecessary delay.

Finally, Plaintiffs argue that an agency is not "immunized" from an unlawfully withheld or unreasonably delayed claim merely because it attempts to act before a statutory deadline. *Id.* In support of this proposition, Plaintiffs cite *American Academy of Pediatrics v. FDA*, 330 F. Supp. 3d 657 (D. Mass. 2018). But in that case, the Court compelled agency action only after a rule was vacated, remanded back to the agency and the agency failed to issue a new rule. The FDA was originally required to issue a final rule by June 2011, which it did. That rule was vacated by the D.C. Circuit and remanded to the agency. *Id.* at 661. The vacatur "reset the two-year clock" to promulgate a rule consistent with statutory deadlines. *Id.* at 664. Yet, more than five years later, the FDA still had not promulgated a revised rule and informed the Court that no rule would be forthcoming until at least 2021. *Id.* at 662.

Given these facts, the Court found that the FDA unlawfully withheld and unreasonably delayed agency action. *Id.* at 667. *See also id.* at 664 (collecting cases and observing that "[g]enerally, '[t]he cases in which courts have afforded relief have involved delays of years'"

16

(quoting *Towns of Wellesley, Concord, & Norwood v. FERC*, 829 F.2d 275, 277 (1st Cir. 1987))).[4]

This bears no resemblance to the circumstances here. HUD does not seek to move at "whatever pace it chooses", *id.* at 664, and has not waited years to act. Rather, HUD specifically issued the September 5 NOFO as soon as practicable after the issuance of the Executive Orders, and in a manner that ensured the granting of awards was possible prior to the statutory deadline.

Regardless, even if HUD has missed a particular deadline, that "does not, alone, justify judicial intervention." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 74(D.C. Cir. 1991). Even if the Court finds that "[HUD]'s sluggishness has violated a statutory mandate…[e]quitable relief . . . does not necessarily follow a finding of a violation: respect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities." *Id.*

## VI.     Plaintiffs Requested Relief Goes Beyond Appropriate Limits

### A.     Remand To The Agency Is The Only Proper Relief, If Any

The proper relief, if any, would be to remand to the agency so that HUD can revise the NOFO with lawful criteria and/or so that HUD can provide a more reasoned explanation for its actions. Defs. Mem. at 24.

Plaintiffs do not apparently take issue with the concept of a remand but do dispute that the Court could sever any conditions deemed improper and preserve the remainder of the

---

[4] Even after this finding, the *Am. Academy* court did not compel the FDA to immediately promulgate the long-delayed rule, which is the equivalent of the relief that Plaintiffs seek here. Rather, the Court ordered the FDA to provide an expedited schedule ultimately leading to the promulgation of a rule. *Id.* at 667. Under that standard, HUD has already complied with any violation of 706(1), since the NOFO was issued on September 5.

NOFO.  Pls. Rep. at 20.  Plaintiffs argue that severance is not appropriate here as "the remainder of the agency action could not function sensibly without the stricken provision".  *Id.* (citation omitted).  But Plaintiffs fail to adequately explain why the NOFO could not function sensibly without certain severed provisions.  Indeed, they could.  For instance, the Court could sever the "sex-binary" criteria and leave other criteria intact.  No sound reason exists why the NOFO process could not function sensibly in this manner.

Plaintiffs claim that inclusion of unlawful criteria "tainted the competition", requiring Defendants to run a new competition.  *Id.*  But because of the still existing TRO, no competition was ever run under the September 5 NOFO, so concerns about running a new competition are misplaced.

And Plaintiffs concern about the seven-day application period defies reason.  *Id.*  That application period was put in place to address the expiration of FY 2025 funding on September 30, 2025.  It is no longer relevant under the current conditions when September 30, 2025 is long past.  But the notion that the Court could not sever any improper conditions, including the application timing provision, because severing this particular provision, which in any event is no longer central to the NOFO, would leave no extant application deadline makes little sense.  The agency could set a new application deadline on remand, including one that provides at least thirty days if required.

Remand to the agency remains the appropriate form of relief.  And a remand that does not set aside the entire September 5 NOFO but removes appropriate improper conditions remains a viable option.  *See, e.g.*, *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988) (design of regulation is such that invalid subsection "is severable").

**B.    A Permanent Injunction Remains Unwarranted**

Plaintiffs continue to improperly seek a permanent injunction in this matter and one that would bar Defendants from imposing substantially similar criteria for any CoC Builds awards. Pls. Rep. at 21.  But Plaintiffs are not entitled to prescribe HUD's future conduct, which is what they seek to do here.  *See, e.g., Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 831 (2024) (Kavanaugh, J., concurring) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." (citation omitted)).  In other words, even if the Court concludes that HUD's NOFO was unlawful, it should refrain from ordering any injunction that purports to bar HUD from issuing a revised NOFO that cures such unlawfulness by, i.e., offering additional explanation or a different process.  Here, and despite Plaintiffs' claims to the contrary, Pls. Rep. at 21, *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 165-66 (2010), remains instructive.

In *Monsanto*, the district court concluded that the Animal and Plant Health Inspection Service (APHIS)'s decision to deregulate a variety of genetically engineered alfalfa violated the operative statute because APHIS did not first assess the deregulation's environmental consequences.  561 U.S. at 147.  The district court then sought to remedy the violation by not only vacating the deregulation decision but also enjoining APHIS from deregulating (in whole or in part) the alfalfa variety in the future without completing an environmental review.  *Id.* at 148. The Court reasoned the district court abused its discretion in granting remedies beyond the vacatur.  *See id.* at 164-65.  Here too, any order that purports to enjoin HUD from issuing a future NOFO with "similar" criteria, Pls. Rep. at 21, would improperly prejudge the outcome on remand.

But Plaintiffs' request goes beyond merely enjoining HUD in this case and for this NOFO. Plaintiffs seek a global injunction barring HUD from imposing substantially similar criteria "*for any* CoC Builds awards." *Id.* (emphasis added); *id.* at 22. (Although Plaintiffs, in an apparent act of generosity, offer that they have not additionally asked the Court to extend any injunction to all CoC awards.). Such relief goes far beyond any appropriate limits. *See* Defs. Mem. at 25.

Plaintiffs raise as proof of the need for a broad injunction a different CoC NOFO for a different funding program that allegedly contains similar criteria. Pls. Rep. at 21. But the issuance of an entirely different NOFO is not relevant to this case or to what actions Defendants might take in the future on this NOFO. Regardless, the NOFO referenced by Plaintiffs involves only the larger CoC program, which in any event has been rescinded, not the CoC Builds grant. And the criteria in HUD's currently enjoined FY 2025 CoC NOFO are substantively different from the challenged criteria in the CoC Builds NOFO. *Compare, e.g.*, CoC Builds NOFO, FR-6902-N-25A, at 30, AR 2145(criteria requiring that "The city, county, or state in which the project is located cooperates with Federal immigration enforcement") *with* FY 2025 CoC NOFO, FR-6901-N-25, at 117 (not including such criteria and instead including a general condition requiring applicants to be in "Compliance with Immigration Requirements (8 U.S.C. 1601-1646; Executive Order 14218)").

But as Plaintiffs acknowledge, Pls. Rep. at 22, they seek an injunction covering only CoC Builds awards, not all CoC awards, thus casting further doubt on the relevance of the cited NOFO.

On the irreparable harm factor, Plaintiffs argue that they are not claiming economic harm but merely "the loss of the opportunity to compete for funding." Pls. Rep. at 22. But Plaintiffs

do not otherwise counter Defendants argument – that this "opportunity" is essentially a speculative claim that Plaintiffs will receive future economic benefits in the form of government grants. Such harms are generally not irreparable. *See* Defs. Mem. at 25-26.

And there is nothing "cryptic[ ]", Pls. Rep. at 22, n.8, about Defendants' argument that conditions requiring compliance with federal law cannot form the basis for an irreparable harm claim. Defs. Mem. at 25. Plaintiffs state that Defendants did not explain how any of the conditions here meet this standard. But this ignores Defendants' opening brief, which did just that. *See, e.g.*, *id.* at 11-13.

Finally, Plaintiffs insist that the balance of equities is not close here and attempt to summarily dismiss Defendants' arguments on that injunction factor. Thus, Plaintiffs do not challenge Defendants' main point: that an injunction interfering with the Executive's priorities is itself a substantial harm in the balance of the equities analysis. For, "[a]ny time [the Government] is enjoined by a court from effectuating [laws], it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *see also Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (quoting *King*).

## C.    The Court Cannot Compel Defendants To Award NOFO Funding To Plaintiffs Or Anyone Else

Plaintiffs claim that Defendants' basis for the proposition that the Court cannot affirmatively compel the agency to award the NOFO funding is "unclear." Pls. Rep. at 23. What Defendants meant is that such relief is only available, if at all, if an agency has unlawfully withheld or unreasonably delayed action. 5 U.S.C. § 706(1)[5]. In other words, under 5 U.S.C. §

---

[5] Plaintiffs refer to a 5 U.S.C. § 706(a). Pls. Rep. at 23. Plaintiffs are likely referring to 5 U.S.C. § 706(1).

706(1), compelling specific agency action requires a finding of an unlawful withholding or an unreasonable delay.  As Defendants argue that no unlawful withholding or unreasonable delay occurred here, such relief is unavailable.  *See* Defs.' Mem. at 16-17, 24. and *supra* at 15-17.

And finally, on the question of preserving the appropriated funding that otherwise lapsed at the end of FY2025: Contrary to Plaintiffs' claim, the government does not "ignore" case law that allegedly establishes the principle that the Court retains inherent equitable authority to preserve the appropriated CoC Builds funds for award past their expiration date.  Pls. Rep. at 23.  But as we explained, such out-of-circuit caselaw, which Defendants acknowledged, has been recently heavily criticized by the D.C. Circuit.  *See Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024) (criticizing older, contrary cases as belonging to the "'ancien regime' when courts took a much more freewheeling approach to the law of remedies."), *reh'g en banc denied*, No. 21-5263, 2024 WL 4092894 (D.C. Cir. Sep. 3, 2024).  *See also* Defs. Mem. at 26.

22

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Defendants and deny summary judgment to Plaintiffs.

Dated: January 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General, Civil Division*

JOSEPH E. BORSON
*Assistant Branch Director*

/s/  *Joshua N. Schopf*
JOSHUA N. SCHOPF (D.C. Bar 465553)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 514-6304
Email: joshua.n.schopf@usdoj.gov

*Counsel for Defendants*