UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NATIONAL ALLIANCE TO END HOMELESSNESS and WOMEN'S DEVELOPMENT CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT TURNER, in his official capacity as Secretary of the United States Department of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 25-cv-00447-MSM-AEM |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

This case involves the executive branch's attempt to leverage federal grant funding to pressure compliance with its policy goals. After having already reviewed applications and selected awardees for grant funding intended to address homelessness, and just weeks before the statutory lapse of that funding, the Department of Housing and Urban Development ("HUD") issued new eligibility criteria that would disqualify applicants from jurisdictions that do not align with the current administration's immigration and homelessness policies. This new criteria also requires each applicant to certify that it will not operate safe injection sites (even

on its own dime) and, peculiarly, that the applicant "does not and will not deny the sex binary in humans or promote the notion that sex is a chosen or mutable characteristic." (ECF No. 25-1 at 31.)

Two nonprofit organizations that work to address homelessness (together, "Plaintiffs") sued both HUD and HUD Secretary Scott Turner (together, "Defendants"), challenging HUD's actions as unlawful. (ECF Nos. 1; 25.) Before the Court is the Plaintiffs' Motion for Summary Judgment (ECF No. 26) and the Defendants' Cross-Motion for Summary Judgment (ECF No. 28.) For the following reasons, the Plaintiffs' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and Defendants' Cross-Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

Congress enacted the McKinney-Vento Homeless Assistance Act ("Homeless Assistance Act") in 1987 to provide federal funding for programs that seek to ameliorate homelessness. Pub. L. No. 100-77, § 102, 101 Stat. 482, 484-85 (1987), *codified* at 42 U.S.C. § 11301. Congress amended the Homelessness Assistance Act in 2009 through the Rapid Transition to Housing Act, establishing the Continuum of Care ("CoC") program to help individuals and families experiencing homelessness move into transitional and permanent housing. Pub. L. No. 111-22, div. B, tit. III, § 1301(2), 123 Stat. 1632, 1680-84 (2009), *codified* at 42 U.S.C. § 11381. Grants awarded under CoC must be used to carry out one or more of a set of statutorily

prescribed activities related to increasing homeless individuals' access to housing and supportive services. *See* 42 U.S.C. §§ 11383(a), 11360(29).

A statutory framework governs HUD's administration of grant funding for programs like CoC. Under 42 U.S.C. § 12711, HUD is barred from "establish[ing] any criteria for allocating or denying funds . . . based on the adoption, continuation, or discontinuation by a jurisdiction of any public policy, regulation, or law that is (1) adopted, continued, or discontinued in accordance with the jurisdiction's duly established authority, and (2) not in violation of any Federal law." 42 U.S.C. § 11386a(b)(1) sets required selection criteria for awarding funds, including: (A) "the previous performance of the recipient regarding homelessness"; (B) the recipient's planned use of the funds to address homelessness; (C) the methodology used by the recipient in determining project priority; (D) "the extent to which the amount of assistance to be provided . . . will be supplemented with resources from other public and private sources"; (E) the "demonstrated coordination by the recipient" with other entities targeting homelessness; (F) the program goals and outcomes of recipients who serve homeless families with children and youth; and (G) "such other factors as the Secretary determines to be appropriate to carry out this part in an effective and efficient manner." 42 U.S.C. § 11386(b) outlines a list of required terms to which a recipient must agree to receive funds, all relating to effective administration of proposed projects, including a residual clause permitting "such other terms and conditions as the [HUD] Secretary may establish to carry out this part in an effective and efficient manner."

The HUD Reform Act of 1989 further requires that HUD publish the criteria through which it selects awardees "[n]ot less than 30 days before any deadline by which applications . . . must be submitted."  42 U.S.C. § 3545(a)(3).  This deadline may only be waived "if the Secretary determines that the waiver is required for appropriate response to an emergency."  *Id.* § 3545(a)(5).  In such circumstances, "[n]ot less than 30 days after providing a waiver . . . the Secretary shall publish in the Federal Register the Secretary's reasons for so doing."

In 2022, Congress appropriated $75 million for "one-time awards under the Continuum of Care program for new construction, acquisition, or rehabilitation of new permanent supportive housing."  Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, div. L, tit. II, 136 Stat. 4459, 5160 (2022).  Awards from these appropriations are required to be made "on a competitive basis, based on need and other factors to be determined by the Secretary, including incentives to establish projects that coordinate with housing providers, healthcare organizations and social service providers."  *Id.*  These funds were to "remain available until September 30, 2025."  *Id.* at 5158.

HUD issued a notice of funding opportunity ("NOFO") in July 2024 to solicit applications for these CoC funds.  (ECF No. 26-2 at 13.)  Although those applications were due in December 2024, *id.* at 18, HUD did not make any awards before the change in presidential administrations.  Instead, HUD published a new CoC Builds NOFO on May 16, 2025.  *Id.* at 5.  That NOFO, which stated that it "aligned with the President's Executive Orders and the goals of the Administration," required prior

4

applicants to resubmit their applications. *Id.* Due to the impending expiration of the appropriated funds in September, a 45-day deadline (rather than the usual 60-day deadline) was set for applications. *Id.* at 7. From the 107 applications it received, HUD selected 14 applicants for awards, and it notified Congress in August 2025 that those awards had been made. *Id.* at 10–12.

However, before any awards were actually finalized, on September 5, 2025, HUD issued a new NOFO with a deadline of 3 p.m. on September 12. *Id.* at 568. This NOFO included two categories of new criteria (collectively, "New Criteria") required for all recipients. *Id.* at 168–77. First, the NOFO required that the proposed project be located in a jurisdiction that "enforces laws and/or ordinances prohibiting urban camping or loitering, prohibiting open illicit drug use, and prohibiting urban squatting," "cooperates with Federal immigration enforcement," and "[s]ubstantially implements and complies with SORNA [the Sex Offender Registration and Notification Act], particularly in the case of registered sex offenders with no fixed address, including by adequately mapping and checking the location of homeless sex offenders." *Id.* Plaintiffs categorize these requirements as "Jurisdiction-Based Criteria." (ECF No. 27 at 20.)

Second, the September 5, 2025 NOFO added two criteria related to applicants' own activities, apparently without regard for whether those activities are related to federal funding. (ECF No. 26-2 at 176, 179.) One of these criteria requires each applicant to certify that it "does not" and "will not operate drug injection sites or 'safe consumption sites,' knowingly distribute drug paraphernalia on or off of property

5

under their control, permit the use or distribution of illicit drugs on property under their control, or conduct any of these activities under the pretext of 'harm reduction.'" *Id.* at 171. The other (the "Sex Binary Criterion"), contained within a provocatively named subsection "Affirming Fairness and Reality," requires each applicant to certify that it "does not and will not deny the sex binary in humans or promote the notion that sex is a chosen or mutable characteristic." *Id.* at 176. Plaintiffs categorize these two requirements as "Applicant-Based Criteria." (ECF No. 27 at 21.)

The September 5 NOFO outlined a three-step process for reviewing awards, which ensures that applicants who fail to satisfy these criteria are ineligible for CoC Builds awards. *See* ECF No. 26-2 at 168–79. The NOFO states that eligible applicants will receive awards on, effectively, a first-come, first-served basis. *Id.* at 179–80. Defendants appear to have provided no contemporaneous rationale for the added criteria or other changes in CoC awards, apart from a statement referencing two Executive Orders related to grant administration and homelessness and asserting that the September 5 NOFO "upholds" those orders. (ECF No. 26-2 at 9.)

Plaintiffs sued Defendants on September 11, 2024 challenging the September 5 NOFO's new criteria and process. (ECF No. 1.) Plaintiffs moved that same day for a temporary restraining order enjoining HUD from imposing or implementing the criteria and pausing the expiration of the appropriated CoC funds. (ECF No. 2.) The Court granted the requested order, barring Defendants from awarding the funds and suspending the funds' lapse. (ECF No. 14.) The parties subsequently agreed to proceed directly to summary judgment. (ECF No. 16.)

On October 2, 2025, HUD published in the Federal Register its reasons for waiving the statutorily mandated 30-day application period. 90 Fed. Reg. 47809 (Oct. 2, 2025). According to HUD, "exigent and emergency circumstances" justified the shortened period based on the impending September 30 deadline for awarding the CoC Builds funds. *Id.* at 47810. HUD explained that the September 5 NOFO was issued so close to the deadline because the new "administration needed adequate time" to ensure that HUD's "grantmaking activity aligned with the current administration's policy priorities." *Id.* HUD claimed that September 5th "was the earliest the NOFO could be published while still meeting HUD's statutory requirement to obligate the CoC funds before they expire on September 30, 2025." *Id.* Plaintiffs subsequently amended their Complaint to, *inter alia*, add claims related to HUD's delays in administering the CoC Builds grants. *See* ECF No. 25.

## II.    STANDARD OF REVIEW

A motion for summary judgment requires the moving party to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, "[a]ll reasonable inferences are to be drawn in favor of the party opposing summary judgment," and "all disputed facts are viewed in the light most favorable" to that party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). "Where the parties cross-move for summary judgment, the court must examine each motion separately, drawing

inferences against each movant in turn." *Vazquez-Velazquez v. Puerto Rico Highways & Transp. Auth.*, 73 F.4th 44, 51 (1st Cir. 2023) (cleaned up).

"[T]he summary judgment rubric has a 'special twist in the administrative law context.'" *Boston Redevelopment Auth. v. Natl. Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016) (quoting *Assoc'd Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997)). "In that context, a motion for summary judgment is simply a vehicle to tee up a case for judicial review and, thus, an inquiring court must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action was arbitrary and capricious." *Id.* In making that determination, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706.

## III.   DISCUSSION

Plaintiffs challenge the New Criteria on three grounds. (ECF No. 27 at 26–46.) First, Plaintiffs claim that the New Criteria violate the Administrative Procedure Act ("APA") because they are contrary to law, exceed Defendants' statutory authority, are arbitrary and capricious, and are contrary to the Constitution. *Id.* at 27–36.) Second, Plaintiffs contend that the New Criteria violate the Constitution; specifically, constitutional separation of powers principles, the Spending Clause, the Tenth Amendment, and the First Amendment. *Id.* at 36–45. Third, Plaintiffs assert that the New Criteria are ultra vires conduct—that is, in excess of Defendants' statutory authority—and that, even should the APA not provide an adequate opportunity for judicial review—the Court must enjoin Defendants from

implementing or enforcing them. *Id.* at 45–46. Plaintiffs also challenge Defendants' delay in awarding the CoC Builds grants as unreasonable and unlawful. *Id.* at 37–40.

Defendants challenge the availability and merits of Plaintiffs' claims. (ECF No. 28-1.) Because the heart of this case is easily resolved by Plaintiffs' APA claims, the Court focuses its analysis there.

### A. Defendants' Actions Violated the APA

Under 5 U.S.C. § 706(2)(A), when reviewing a challenge under the APA, the reviewing court must "hold unlawful and set aside agency action, findings, and conclusion found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The APA thus "requires agencies to engage in 'reasoned decisionmaking.'" *Dep't. of Homeland Sec. v. Regents of the U. of California*, 591 U.S. 1, 16 (2020) (quoting *Michigan v. E.P.A.*, 576 U.S. 743, 753 (2015)). "An agency's decision is arbitrary and capricious if the agency relied on improper factors, disregarded 'an important aspect of the problem, offered an explanation that runs counter to the evidence,' or when a reasonable explanation for the agency's decision cannot be discerned." *Gulluni v. Levy*, 85 F.4th 76, 82 (1st Cir. 2023) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). When changing positions, an agency "of course . . . must show that there are good reasons for the new policy," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and must consider any "serious reliance interests" engendered by the status quo, *Regents*, 591 U.S. at 30. Importantly here, "[i]t is a 'foundational principle

of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Regents*, 591 U.S. at 20 (quoting *Michigan*, 576 U.S. at 758).

As a threshold matter, Defendants challenge the availability of APA review for Plaintiffs' claims because "with certain limited exceptions" Defendants' decisions were "committed to agency discretion by law" and therefore not among those categories of agency actions that are judicially reviewable under the APA. *See* ECF No. 28-1 at 15–16 (quoting 5 U.S.C. § 701(a)(2)). But as this and other courts facing similar challenges have determined, 5 U.S.C. § 701(a)(2)'s restriction of judicial review is to be read "quite narrowly," and applies only to "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019) (quoting *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 586 U.S. 9, 22 (2018)); *see also Illinois v. Noem*, No. 1:25-CV-00495-MSM-PAS, 2025 WL 3707011, at *14 (D.R.I. Dec. 22, 2025). Here, the statutory framework governing the CoC programs and the APA itself provide meaningful standards for reviewing HUD's administration of the CoC Builds grants. APA review is therefore not foreclosed by 5 U.S.C. § 701(a)(2).

Having disposed of that threshold issue, the Court finds that Defendants' actions in imposing the New Criteria—and in reissuing the NOFO itself—violated the APA. At the outset, the Court notes that Defendants provided no meaningful contemporaneous explanation for their decision to reissue the CoC Builds NOFO with

10

the New Criteria. While Defendants propose that their post-hoc rationalizations of that decision help illuminate "reasons obscured but implicit in the administrative record," *see* ECF No. 30 at 12 (quoting *Clifford v. Pena*, 77 F.3d 1414, 1418 (D.C. Cir. 1996)), Defendants provide scant support for this assertion, citing only (1) a September 5 email to prospective recipients notifying them of the new NOFO and stating that it "upholds the President's Executive Orders on homelessness and the grantmaking process" and (2) a September 11 email exchange involving a HUD official engaging in some discussion of the NOFO's language about illicit drug use. *See* ECF No. 28-1 at 11–14. Neither these emails nor the rest of the administrative record before the Court illuminates any "obscured but implicit" reasons for HUD's decision to reissue the CoC Builds NOFO with the New Criteria within weeks of the statutory deadline, after having already announced awardees. Absent any such reasonable explanation for its actions, its decisions were quintessentially arbitrary and capricious. *See Gulluni*, 85 F.4th at 82.

The New Criteria also violate the APA by exceeding Defendants' statutory authority. "When an executive agency administers a federal statute, the agency's power to act is 'authoritatively prescribed by Congress.'" *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020) (quoting *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013)). "It is no exaggeration to say that 'an agency literally has no power to act . . . unless and until Congress confers power upon it.'" *Id.* (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)). "Any action that an agency takes outside the

bounds of its statutory authority is ultra vires and violates the Administrative Procedure Act." *Id.* (internal citations omitted).

Here, Congress established required selection criteria for awarding funds for programs like CoC Builds. *See* 42 U.S.C. §§ 11386a(b)(1); 11386(b). As none of the specific criteria included in those statutes encompass the kinds of policy objectives advanced by the New Criteria, Defendants rely on residual clauses affording the Secretary some discretion in making awards based on "such other factors as the Secretary determines to be appropriate." (ECF No. 28-1 at 16–17) quoting 42 U.S.C. § 11386(a)(b)(1)(G); *see also id.* § 11386(b)(8). But as this Court has previously stated, "the existence of a residual clause at the end of [a] list cannot be read as surrendering unbridled discretion to Defendants" in grant administration. *Illinois v. Noem*, 2025 WL 3707011, at *13; *see also City of Providence v. Barr*, 954 F.3d 23, 40–41 (1st Cir. 2020) (rejecting similar arguments reading a residual clause as authorizing discretion to impose unrelated immigration cooperation conditions on grant funding). And another court has already rejected Defendants' arguments as they pertain to CoC grant funding. *See Martin Luther King, Jr. Cnty. v. Turner*, 785 F. Supp. 3d 863, 886–87 (W.D. Wash. 2025), *appeal docketed*, No. 25-3664. The Court likewise determines that the New Criteria exceeded Defendants' statutory authority.

The Jurisdiction-Based Criteria further violate the APA because they are contrary to 42 U.S.C. § 12711's explicit prohibition on criteria that are "based on the adoption, continuation, or discontinuation by a jurisdiction of any public policy, regulation, or law" so long as that policy or law was "(1) adopted, continued, or

12

discontinued in accordance with the jurisdiction's duly established authority, and (2) not in violation of any Federal law." Defendants claim that the Jurisdiction-Based Criteria is not, in fact, "based" on jurisdictional laws or policies, but are instead based on "carrying out the CoC program efficiently and effectively." (ECF No. 28-1 at 19–20.) This is sheer sophistry. The Jurisdiction-Based Criteria obviously fall within the plain meaning of 42 U.S.C. § 12711 terms because they determine eligibility for CoC funds based on whether an applicant is located in a jurisdiction that maintains certain public policies or laws. The Jurisdiction-Based Criteria therefore clearly violate that statute.

Plaintiffs also challenge the Sex Binary Criterion as contrary to law based on existing statutory and regulatory prohibitions on discrimination. (ECF No. 27 at 34–35.) Defendants expressly decline to defend the Sex Binary Criterion, and acknowledge that it "may be read to apply to grantee actions beyond the scope of federal funding, *contra Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013)." (ECF No. 28-1 at 24.) Given the merits of Plaintiffs' arguments against the Sex Binary Criterion and Defendants' refusal to defend that criterion, the Court concludes that it is also unlawful under the APA.

Plaintiffs' claim that Defendants' unreasonably delayed or unlawfully withheld required agency action also implicates the APA; namely, 5 U.S.C. § 706(1), which requires a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (explaining that "[t]he APA provides relief for a failure to act in § 706(1)"). But as

Defendants note, "[g]enerally '[t]he cases in which courts have afforded relief have involved delays of years.'" *Am. Acad. of Pediatrics v. U.S. Food and Drug Administration*, 330 F. Supp. 3d 657, 664 (D. Mass. 2018) (quoting *Towns of Wellesley, Concord and Norwood, Mass. v. FERC*, 829 F.2d 275, 277 (1st Cir. 1987)); *see also id.* at 665 (collecting cases). Here, while Defendants did apparently engage in some degree of delay by waiting until September to reissue the CoC Builds NOFO, the statutory deadline for Defendants to award the funds had not yet passed before the Court enjoined the lapse of those funds. While the Court's injunction may not necessarily "free" HUD from its obligation to award funds in a timely manner, *see id.* at 664, the delay in agency action here does not amount to the kind of unreasonable delay found actionable by other courts, and—as the Court has already determined Defendants' actions otherwise violated the APA—is likely unnecessarily duplicative of Plaintiffs' other claims.[1]

### B.    Vacatur and Declaratory Relief Are Warranted

In their Motion for Summary Judgment, Plaintiffs request that the Court do the following:

> (1) declare unlawful, vacate, and set aside the September 5 NOFO, the New Criteria, and the one-week application period;
>
> (2) permanently enjoin Defendants, their agents, and all persons acting in concert or participation with Defendants from imposing or implementing the

---

[1] However, should Defendants persist in attempting to add unlawful criteria to CoC Builds grants following this Court's order, Defendants may expose themselves to a future 5 U.S.C. §706(1) claim. *Cf. Oxfam Am., Inc. v. SEC*, 126 F. Supp. 3d 168, 172–73 (D. Mass. 2015) (concluding that an agency's promulgation of a later vacated rule constituted "inadequate action" that did not satisfy statutory requirements).

New Criteria, or any substantively similar criteria, on any HUD CoC Builds awards in any manner, including by requiring applicants to meet the criteria to be considered for an award or to receive an award, by considering those criteria in selecting awardees, or by requiring grantees to comply with such criteria upon obtaining an award;

(3) compel Defendants to award expeditiously, pursuant to lawful criteria and process, the $75 million that Congress appropriated for one-time awards under the CoC program for permanent supportive housing; and

(4) continue exercising its equitable authority to preserve the appropriated CoC Builds funds for award pending Defendants' compliance with the Court's order requiring lawful award of the funds.

(ECF No. 26 at 1–2.)  Having determined that Plaintiffs' 5 U.S.C. § 702(1) claim is unsupported by the present circumstances, and confident that it continues to possess the authority to preserve the appropriated CoC Builds funds, the Court focuses on the first two forms of relief Plaintiffs request.[2]

Defendants propose that, should the Court find for Plaintiffs, "the appropriate relief would be to remand to the agency so that HUD can revise the NOFO with lawful criteria and/or so that HUD can address any finding that it acted arbitrarily and capriciously and provide a more reasoned explanation of its actions."  (ECF No. 28-1

---

[2] While Defendants raise some doubts as to the Court's equitable authority to prevent appropriations from lapsing, citing *Goodluck v. Biden,* 104 F.4th 920, 928 (D.C. Cir. 2024), as the Court has previously noted, *Goodluck* appears to have questioned that authority "based on that court's apparent understanding of 31 U.S.C. § 1502(b) as providing an alternate statutory basis for such authority." *Illinois v. Noem*, 2025 WL 3707011, at *9; *see Goodluck*, 104 F.4th at 928 ("But in the appropriations context, Congress has expressly authorized courts to suspend the lapse of budget authority while lawsuits play out.") (citing 31 U.S.C. § 1502(b)).  The Court remains confident that, whether through 31 U.S.C. § 1502(b), the Court's own equitable authority, or the underlying mechanics of federal appropriations, *see* 1 U.S. Gen. Accounting Office, *Principles of Federal Appropriations Law*, 5-82 (3d ed. 2004), it continues to possess the authority to suspend the expiration of the funds at issue here.

15

at 33.) Defendants suggest that, should vacatur be warranted, the Court "need not set aside the entire NOFO" and could instead simply sever any improper conditions from the NOFO. *Id.* at 36. Defendants also challenge the appropriateness of a permanent injunction, arguing that such an "extraordinary remedy" is not warranted here because it is unnecessary, overbroad, vague, and otherwise not merited. *Id.* at 33–35.

Under 5 U.S.C. § 706(2)(A), a court that has found agency action to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" *must* "hold unlawful and set aside" that agency action. Here, the unlawful agency action was not just HUD's decision to include the New Criteria for CoC Builds awards, but its decision to reissue the NOFO for those awards at the last minute, after having already determined awardees, and with only a seven-day deadline for applications.[3] As such, the appropriate remedy is to vacate the September 5 NOFO altogether.

The Court now turns to Plaintiffs' request that the Court permanently enjoin Defendants from imposing the New Criteria. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.,*

---

[3] Although HUD has invoked the HUD Secretary's authority to waive the statutory 30-day deadline for applications, *see* 90 Fed. Reg. 47809 (Oct. 2, 2025), the "exigent and emergency circumstances" it claims justified that waiver was the impending September 30 deadline for awarding the CoC Builds funds. But this was an entirely self-inflicted circumstance. Permitting HUD to create its own "emergency" through its decision to reissue the NOFO would obviously and severely undermine the 30-day deadline provided by Congress.

16

547 U.S. 388, 391 (2006). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). However, "[i]n the context of analyzing claims under the APA, some courts have held that 'once the court reache[s] the conclusion that the rule was indeed illegal . . . there [is] no separate need to show irreparable injury . . . .'" *Illinois v. FEMA*, 2025 WL 2716277, at \*15 (quoting *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)) (alterations in original).

Under these circumstances, the Court finds that permanent injunctive relief is not warranted here. Plaintiffs' only argument that they face irreparable harm absent such an injunction is that they will lose the "'opportunity to compete' for the funds on fair terms." *See* ECF No. 27 at 51. But this contention appears to be an "overly speculative forecast of anticipated harm" given the Court's determination that vacatur of the September 5 NOFO is appropriate here. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996). While the Court acknowledges that Defendants might, notwithstanding the Court's finding that the New Criteria are unlawful, nevertheless attempt reissue a NOFO containing those unlawful criteria, that possibility is not enough to justify the "drastic remedy" of a permanent

17

injunction. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) ("If a less drastic remedy (such as partial or complete vacatur of [the agency's] decision) [is] sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted.").

## IV. CONCLUSION

Once again, this Court is faced with a case in which an executive agency has made a last-minute decision to make major, disruptive changes to grants within its purview, all for the express purpose of accomplishing the current administration's policy objectives. As it has stated before, the Court's role here is not to evaluate the merits of those policy objectives, and it remains "entirely possible that Defendants could, through proper adherence to the APA and to both the text and intent of the existing statutory framework, make rational adjustments to the way in which [grant] funds are awarded to reflect the current administration's [priorities]." *Illinois v. Noem*, 2025 WL 3707011, at *19. And where the existing statutory framework forecloses the particular adjustments that Defendants seek, the appropriate remedy is to engage with Congress to obtain clear legal authorization through amendments to that framework.

As it stands, however, Defendants violated the APA through their slapdash imposition of political whims on CoC Builds grants. As such, for the reasons provided above, the Plaintiffs' Motion for Summary Judgment (ECF No. 26) is GRANTED IN PART and DENIED IN PART, and Defendants' Cross-Motion for Summary Judgment (ECF No. 28) is GRANTED IN PART and DENIED IN PART. The

September 5 NOFO, the New Criteria, and the one-week application period for CoC Builds grants are declared unlawful and are ordered vacated and set aside. The appropriated CoC Builds funds are continued to be ordered preserved pending Defendants' lawful awarding of those funds, consistent with the Court's order. Plaintiff's request for a permanent injunction is denied.

IT IS SO ORDERED.

_____

Mary S. McElroy
United States District Judge

March 31, 2026

19