**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

NATIONAL ALLIANCE TO END HOMELESSNESS, *et al.*,

*Plaintiffs*,

v.

SCOTT TURNER, in his official capacity as Secretary of the United States Department of Housing and Urban Development, *et al.*,

*Defendants*.

Case No. 25-cv-00447-MSM-AEM

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i
INTRODUCTION ..... 1
BACKGROUND ..... 1
A. HUD's September 5 Notice of Funding Opportunity for CoC Builds Grants ..... 1
B. This Litigation ..... 2
LEGAL STANDARD ..... 4
ARGUMENT ..... 5
I. Plaintiffs Are Entitled to a Fee Award ..... 5
C. This motion is timely ..... 5
D. Plaintiffs are fee-eligible organizations ..... 5
E. Plaintiffs are prevailing parties ..... 6
F. The government cannot meet its burden to prove its position was substantially justified ..... 7
G. No special circumstances make an award unjust ..... 8
II. Plaintiffs' Requested Fee Amount Is Reasonable ..... 9
H. The hours expended are reasonable ..... 9
I. An hourly rate of $258.63 is reasonable ..... 11
CONCLUSION ..... 13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Buckhannon Bd. Care & Home Inc. v. W. Va. Dep't of Health & Human Res.*,
532 U.S. 598 (2001) ........ 6

*Castaneda-Castillo v. Holder*,
723 F.3d 48 (1st Cir. 2013) ........ 7, 12

*Commissioner, INS v. Jean*,
496 U.S. 154 (1990) ........ 7, 9

*Diggett v. Berryhill*,
292 F. Supp. 3d 581 (D.R.I. 2017) ........ 11

*Eduardo V. v. O'Malley,*
No. 23-011, 2024 WL 22441521 (D.R.I. Feb. 21, 2024) ........ 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........ 6, 9, 10, 11

*Inmates of RI Training School v. Martinez*,
465 F. Supp. 2d 131 (D.R.I. 2006) ........ 6

*Lewis v. Comm'r of Soc. Sec.,*
No. 2:12-cv-0490, 2014 WL 4794415 (S.D. Ohio. Sep. 25, 2014) ........ 7, 8

*Lewis v. Comm'r of Soc. Sec.,*
No. 2:12-cv-0490, 2014 WL 5305511 (S.D. Ohio. Oct. 15, 2014) ........ 8

*Maricelys S. v. Saul,*
No. CV 18-479, 2020 WL 2063938 (D.R.I. Apr. 29, 2020) ........ 12

*Me. Sch. Admin. Dist. No. 35 v. Mr. R.*,
321 F.3d 9 (1st Cir. 2003) ........ 6, 7

*Patricia H. v. O'Malley,*
No. 1:23-cv-00117, 2024 WL 1701546 (D. Me. 2024) ........ 8

*Saysana v. Gillen*,
614 F.3d 1 (1st Cir. 2010) ........ 7

*Schock v. United States*,
254 F.3d 1 (1st Cir. 2001) ........ 7

*Sierra Club v. Sec'y of Army*,
820 F.2d 513 (1st Cir. 1987) .......... 5

*Taucher v. Brown-Hruska*,
396 F.3d 1168 (D.C. Cir. 2005) .......... 9

*United States v. 1,378.65 Acres of Land*,
794 F.2d 1313 (8th Cir. 1986) .......... 5

**FEDERAL STATUTES**

28 U.S.C. § 2412 .......... 4, 5, 6, 7, 8, 11

42 U.S.C. § 3545 .......... 1, 8

42 U.S.C. § 12711 .......... 2, 8

Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, 136 Stat. 4459 (2022) .......... 1

**OTHER AUTHORITIES**

*Consumer Price Index for All Urban Consumers (CPI-U) 2016-2026*, U.S. Bureau of Labor Statistics, https://perma.cc/2BMH-WJBT (last visited Sep. 22, 2026) .......... 12

## INTRODUCTION

Plaintiffs the National Alliance to End Homelessness and Women's Development Corporation respectfully seek an award of attorneys' fees under the Equal Access to Justice Act (EAJA). Defendants' actions that prompted this case, and their arguments in this litigation, lacked substantial justification, and Plaintiffs are entitled to recover $120,250 in fees for the hours their attorneys reasonably expended in challenging HUD's unlawful actions, plus additional fees for any additional hours expended litigating this motion.

## BACKGROUND

### A. HUD's September 5 Notice of Funding Opportunity for CoC Builds Grants

This case arose out of the Department of Housing and Urban Development's (HUD's) attempts to award, pursuant to blatantly unlawful criteria and process, $75 million in funding for permanent supportive housing for homeless individuals and families. Congress appropriated those funds and directed HUD to award them to eligible grantees by September 30, 2025. Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, div. L, tit. II, 136 Stat. 4459, 5158, 5160 (2022). HUD solicited and reviewed applications, selected awardees, and even notified members of Congress of the selections in August 2025. Administrative Record (AR) 39, 232–33, 234, 301, 423, 526–27, 641, 1465.[1] But before actually finalizing those awards, HUD abruptly reversed course.

On September 5, 2025—just weeks before the funds were set to expire—HUD issued a new notice of funding opportunity (NOFO) with an unprecedented 7-day window to submit applications, contrary to an express statutory requirement that NOFOs remain open for at least 30 days absent an emergency. AR 2116; 42 U.S.C. § 3545(a). The new NOFO also contained a

[1] Relevant excerpts of the administrative record are at Dkt. No. 26-2.

host of unlawful criteria, including many that flatly conflicted with unambiguous statutory commands. Some of those criteria excluded projects based on the laws and policies of the projects' states and localities—for example, by requiring projects to be located in jurisdictions that cooperate with federal immigration enforcement and that enforce bans on public camping. AR 2137–38, 2144–45. Never mind that a governing statute expressly bars HUD from applying criteria that are based on states' and localities' laws and policies. *See* 42 U.S.C. § 12711. Other criteria effectively disqualified applicants who engaged in disfavored speech and other activities on their own dime, outside the scope of the grant program: Applicants had to commit that they do not and would not deny that sex is binary and immutable in humans and that they would not operate safe injection sites or other harm reduction programs. AR 2140, 2145, 2147–48. Never mind the First Amendment's protections for free speech or the statutory limits on HUD's authority. The NOFO stated that HUD would make awards on a first-come, first-served basis to projects that satisfied the criteria—and obligate the funds by the Monday immediately following the Friday application deadline. AR 2121, 2148–49, 2161.

**B. This Litigation**

On September 11, Plaintiffs the National Alliance to End Homelessness and Women's Development Corporation brought suit against HUD and its Secretary, Scott Turner (collectively, HUD), under the APA and the Constitution to challenge this NOFO, and immediately sought a temporary restraining order. Dkt. Nos. 1, 2.

At the hearing on the TRO motion, HUD effectively acknowledged that at least one part of its unlawful NOFO was indefensible—it declined to defend the portion of the NOFO that required applicants to adopt the Administration's view that sex is binary and immutable. Tr. of TRO Hearing at 16–17 (Dkt. No. 17). The same day, the court orally granted a TRO, which it memorialized in a written order two days later. Text Order (Sep. 12, 2025); Temporary

Restraining Order (Dkt. No. 14). The TRO (1) barred HUD from making awards under the challenged September 5 NOFO and (2) preserved the appropriated funds, which otherwise would have expired on September 30, 2025. Dkt. No. 14. The government agreed that the TRO could remain in place while the parties litigated cross-motions for summary judgment. Joint Mot. for Briefing Schedule and to Clarify TRO at 2 (Dkt. No. 16); *see also* Order (Dkt. No. 18).

Plaintiffs later filed an amended complaint and sought summary judgment. Dkt. Nos. 25, 26. Plaintiffs sought four forms of relief: (1) an order vacating and declaring unlawful the NOFO, its new criteria, and the one-week application period; (2) a permanent injunction barring the defendants from reimposing or implementing the challenged criteria or substantially similar criteria in the future; (3) an order compelling the defendants to expeditiously award the $75 million in funds pursuant to lawful criteria and process; and (4) an order continuing to preserve the appropriated funds for award. Pls.' Mot. for Summ. J. at 1–2 (Dkt. No. 26). The parties proceeded to brief cross-motions for summary judgment. Dkt. Nos. 26–30.

On March 31, 2026, the Court resolved the summary judgment motions. Mem. and Order (Dkt. No. 31). The Court concluded that Plaintiffs' APA claims "easily resolved" the case and it held the NOFO unlawful on multiple independent grounds: The issuance of the NOFO and its criteria were "quintessentially arbitrary and capricious"; the challenged criteria exceeded HUD's statutory authority; the criteria that looked to the jurisdictions' public policies "obviously" violated a statute barring just such jurisdiction-based criteria; and that the "Sex Binary Criterion" conflicted with governing statutes (indeed, HUD declined to defend it). *Id.* at 9–13. Given those rulings, the Court did not reach Plaintiffs' constitutional or ultra vires claims. *See id.* at 8–9. The Court ruled for Defendants on Plaintiffs' claim that HUD had unlawfully withheld or unreasonably delayed agency action by failing to award the $75 million in appropriated funds

pursuant to a lawful process. *Id.* at 13–14. The Court suggested the delay was not lengthy enough to be actionable and explained that, in any event, that claim was "likely unnecessarily duplicative of Plaintiffs' other claims" given the Court's determination that Defendants had "otherwise violated the APA." *Id.* at 14.

Based on these holdings, the Court granted Plaintiffs the vast majority of the relief they sought. It declared unlawful and set aside the NOFO, the NOFO's new criteria, and the one-week application period, and it maintained the order preserving the appropriated funds. *Id.* at 18–19. The Court denied Plaintiffs' request for a permanent injunction barring Defendants from reimposing the criteria in the future, but only because the Court determined that the other relief it granted was enough to resolve the problem. *See id.* at 17–18. In particular, the Court explained that it was "speculative" to predict HUD might attempt to reimpose the unlawful criteria again given "the Court's finding that the New Criteria are unlawful." *Id.* In addition, because the Court had rejected Plaintiffs' claim for agency action unlawfully withheld or unreasonably delayed, it declined to order Defendants to expeditiously award the funds. *Id.* at 15. The Court nevertheless warned that "Defendants may expose themselves to a future [claim for agency action unlawfully held or unreasonably delayed]" if they "persist in attempting to add unlawful criteria to CoC Builds grants following this Court's order." *Id.* at 14 n.1.

## LEGAL STANDARD

The Equal Access to Justice Act provides that courts "shall award to a prevailing party other than the United States fees and other expenses … incurred by that party in any civil action … brought by or against the United States" unless "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The "EAJA is designed to 'encourage relatively impecunious private parties to challenge abusive or unreasonable governmental behavior by relieving such parties of the fear of

incurring large litigation expenses.'" *Sierra Club v. Sec'y of Army*, 820 F.2d 513, 516 (1st Cir. 1987) (quoting *United States v. 1,378.65 Acres of Land,* 794 F.2d 1313, 1315–16 (8th Cir. 1986)).

## ARGUMENT

Plaintiffs are entitled to an award of attorneys' fees here, and their requested fee amount is reasonable.

### I. Plaintiffs Are Entitled to a Fee Award

Five requirements must be met for Plaintiffs to be eligible for a fee award under EAJA: they must (1) file a timely motion, (2) qualify as a "party" eligible for fees, and (3) have prevailed; (4) the government's position must not have been "substantially justified"; and (5) there must be no special circumstances that make an award unjust. *See* 28 U.S.C. § 2412(d). All five requirements are satisfied here.

#### C. This motion is timely

EAJA requires a party seeking fees to submit an application for such fees "within thirty days of final judgment in the action." *Id.* § 2412(d)(1)(B). The statute defines a "final judgment" as "a judgment that is final and not appealable, and includes an order of settlement." *Id.* § 2412(d)(2)(G). In this case, Defendants appealed but then moved to voluntarily dismiss the appeal, and the court of appeals dismissed the appeal on August 28, 2026. Judgment, *Nat'l Alliance to End Homelessness v. Turner*, No. 26-1767 (Aug. 28, 2026); Mandate, *id.* (Aug. 28, 2026). The Court's judgment therefore became "final and not appealable" on August 28, 2026, and this motion is filed within thirty days of that date.

#### D. Plaintiffs are fee-eligible organizations

EAJA limits the types of litigants that are potentially eligible for awards of fees and expenses. *See* 28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(B) (allowing awards to a "prevailing party"

and defining "party" as individuals and organizations who meet certain criteria). As relevant here, fee-eligible litigants include tax-exempt 501(c)(3) organizations that "had not more than 500 employees at the time the civil action was filed." *See Id.* § 2412(d)(2)(B)(ii). Both Plaintiffs in this action are organized under section 501(c)(3) of the Internal Revenue Code and had fewer than 500 employees at the time this action was filed. Declaration of Ann Marie Oliva (Oliva Decl.) ¶ 3; Declaration of Frank Shea (Shea Decl.) ¶ 3. Plaintiffs have assigned any awards of fees and costs to their counsel, which prosecuted this case on their behalf pro bono.[2] Oliva Decl. ¶ 5; Shea Decl. ¶ 5.

**E. Plaintiffs are prevailing parties**

Plaintiffs are also "prevailing parties" entitled to seek fees under EAJA. As the First Circuit has explained, "[f]or purposes of a federal fee-shifting statute, a prevailing party is any party who 'succeeds on any significant issue which achieves some of the benefits plaintiffs sought in bringing suit.'" *Me. Sch. Admin. Dist. No. 35 v. Mr. R.*, 321 F.3d 9, 14 (1st Cir. 2003) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (cleaned up); *accord, e.g.*, *Buckhannon Bd. Care & Home Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (explaining that a "prevailing party" is one who "has been awarded some relief by a court"). Here, Plaintiffs are prevailing parties because the Court "declared unlawful" the "September 5 NOFO, the New Criteria, and the one-week application period for CoC Builds grants"; "vacated and set aside" those actions; and ordered the appropriated CoC Builds funds to continue to be "preserved pending Defendants' lawful awarding of those funds, consistent with

[2] Accordingly, Plaintiffs request that an order awarding fees direct that they be paid directly to counsel. In addition, Plaintiffs request that such order further provide that the sharing of the tribunal-approved award with the American Civil Liberties Union Foundation of Rhode Island is consistent with this Court's decision in *Inmates of RI Training School v. Martinez*, 465 F. Supp. 2d 131 (D.R.I. 2006) and Rhode Island Rule of Professional Conduct 5.4(a)(4).

the Court's order." Mem. and Order at 19 (Dkt. No. 31). That relief provides Plaintiffs "some of the benefits"—indeed, most of the benefits—that they "sought in bringing suit." *See Me. Sch. Admin. Dist.*, 321 F.3d at 14 (cleaned up).

**F. The government cannot meet its burden to prove its position was substantially justified**

To avoid an award of fees, "the government bears the burden of establishing that its position was substantially justified." *Castaneda-Castillo v. Holder*, 723 F.3d 48, 73 (1st Cir. 2013). It must "satisfy this burden by a preponderance of the evidence," and it must establish substantial justification both for the agency action underlying the litigation and for its litigating positions. *Id.*; *see also* 28 U.S.C. § 2412(d)(2)(D). To be substantially justified, the government's "positions must have a reasonable basis in both law and fact." *Castaneda-Castillo*, 723 F.3d at 73. In assessing substantial justification, courts "must examine the actual merits of the government's litigation position." *Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010) (cleaned up). Courts, moreover, "treat[] a case as an inclusive whole, rather than as atomized line-items." *Commissioner, INS v. Jean*, 496 U.S. 154, 161–62 (1990). Thus, the fact "that the government succeeded at some stage of the litigation does not by itself prove the requisite level of justification." *Schock v. United States*, 254 F.3d 1, 5 (1st Cir. 2001).

Applying these standards, HUD cannot demonstrate that its position was substantially justified. For one, HUD did not even defend the "sex binary" criterion in the September 5 NOFO. Mem. in Supp. of Defs.' Cross-Mot. for Summ. J. and in Opp'n to Pls.' Mot. for Summ. J. at 15 (Dkt. No. 28-1) ("Defendants are not defending this provision here."). Rightfully so, as that criterion was unlawful several times over. *See* Pls.' Mem. in Supp. of Mot. for Summ. J. at 20–26, 28–32, 34–36 (Dkt. No. 26-1). "The lack of justification for th[e] decision" to issue a NOFO with that criterion is alone "enough to support an award of fees under the EAJA." *Lewis*

*v. Comm'r of Soc. Sec.*, No. 2:12-cv-0490, 2014 WL 4794415, at *3 (S.D. Ohio. Sep. 25, 2014) (awarding fees where government had chosen "not to defend an indefensible position"), *R. & R. adopted*, 2014 WL 5305511 (S.D. Ohio Oct. 15, 2014).

Other aspects of HUD's position likewise demonstrate HUD's lack of substantial justification. The NOFO's one-week application window directly conflicted with a statute requiring at least a 30-day application window absent an emergency. 42 U.S.C. § 3545(a)(3). And although HUD claimed there was an "emergency" given that the funds were expiring imminently, the court rejected this as "an entirely self-inflicted circumstance" and concluded that allowing HUD to create its own emergency would "obviously" undermine the statutory provision. Mem. and Order at 16 n.3 (Dkt. No. 31).

The NOFO's multiple criteria that disqualified applicants based on the public policies of their states and localities also straightforwardly conflicted with a statute that "explicit[ly] prohibit[s]" HUD from using criteria that are "based on" a jurisdiction's lawful adoption of "of any public policy, regulation, or law." *Id.* at 12–13 (quoting 42 U.S.C. § 12711). Including those expressly prohibited criteria lacked substantial justification—as did HUD's attempt to defend them. Indeed, the Court rejected HUD's attempts to defend those criteria as "sheer sophistry." *Id.* at 13.

### G. No special circumstances make an award unjust

A fee award is also barred if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This exception looks to "equitable considerations" and "should be strictly construed." *Patricia H. v. O'Malley*, No. 1:23-cv-00117, 2024 WL 1701546, at *3 (D. Me. 2024) (cleaned up). For example, it "may preclude an EAJA award where there is outrageous or inexcusable conduct on the part of the plaintiff or its counsel during litigation, or if the awarding of attorney's fees would result in an unjust hardship." *Id.* (cleaned up). The burden is on the

government to show special circumstances. *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005). Defendants have not and could not meet that burden here.

**II. Plaintiffs' Requested Fee Amount Is Reasonable**

As set forth in the accompanying declarations, Plaintiffs request $120,250 in attorneys' fees, reflecting approximately 465 hours spent litigating this matter and this motion for attorneys' fees, and a $258.63 hourly rate. The hours expended and the hourly rate are both reasonable.

**H. The hours expended are reasonable**

EAJA entitles prevailing plaintiffs to recover fees "for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 430 n.4 (cleaned up) (discussing fee awards under another fee-shifting statute); *see also Comm'r, INS v. Jean*, 496 U.S. 154, 161 (1990) (explaining that the "task of determining what fee is reasonable" under EAJA "is essentially the same as that described in *Hensley*"). This includes time reasonably spent litigating a motion for fees. *Jean*, 496 U.S. at 162. The prevailing plaintiffs must "document the appropriate hours expended." *Eduardo V. v. O'Malley*, No. 23-011, 2022 WL 22441521, at *6 (D.R.I. Feb. 21, 2024).

A detailed breakdown of time expended is attached as Exhibits to the declarations of counsel accompanying this motion. Declaration of Kristin Bateman (Bateman Decl.), Exs. B–D; Declaration of Amy R. Romero (Romero Decl.), Ex. A; Declaration of Antonia Fasanelli (Fasanelli Decl.), Ex. A; Declaration of Lynette Labinger (Labinger Decl.), Ex. A. As explained in the Declaration of Kristin Bateman, the hours for which fees are sought were necessarily and reasonably expended. Bateman Decl. ¶¶ 4–11. HUD released the unlawful NOFO on a Friday afternoon, made applications due one week later, and stated that HUD would make awards three days after that. *See supra* Background Section A. This required swift action, close coordination among counsel sharing responsibilities, and a significant investment of time to prepare the

complaint, motion for temporary restraining order, and accompanying declarations on an expedited basis. Bateman Decl. ¶¶ 8–10. As the litigation proceeded, counsel expended reasonable amounts of time preparing an amended complaint, motion for summary judgment, accompanying declarations, and reply brief, as well as reviewing HUD's lengthy administrative record (which totaled over 2000 pages) and preparing this petition for fees, among other things. *Id.* ¶ 10.

Further, the partial grant of summary judgment to Defendants does not warrant any reduction in Plaintiffs' fee award. The Supreme Court has made clear that where, as here, "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. Rather, fees will be reduced in only two circumstances. First, if the unsuccessful claim is "unrelated to" the claims on which the plaintiff prevailed, the plaintiff cannot recover for time spent on the unsuccessful claim. *Id.* at 434–35. This circumstance arises only where a lawsuit includes "distinctly different claims for relief that are based on different facts and legal theories." *Id*. at 434. Second, if the "plaintiff has achieved only partial or limited success," a reduction might be appropriate; the question is "whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.* at 436.

Neither circumstance warranting a reduction in fees exists here. First, the claims on which Plaintiffs did not prevail—the claim for agency action unlawfully withheld or unreasonably delayed and the request for an injunction barring HUD from reimposing the same unlawful criteria in the future—are not "unrelated to" the claims on which Plaintiffs did prevail. All claims arise out of the same NOFO and HUD's attempts to use unlawful criteria and process

to award the funds. *See generally* First Am. Compl. (Dkt. No. 25). Indeed, the unsuccessful request for an injunction was a request for relief based on the exact same claims on which Plaintiffs prevailed. *See* Pls.' Mem. in Supp. of Mot. for Summ. J. at 42 (Dkt. No. 26-1).

Second, although Plaintiffs did not prevail on all claims, they still achieved "excellent results." *See Hensley,* 461 U.S. at 435. Indeed, the Court ruled for Defendants on Plaintiffs' unsuccessful claims largely because it concluded that the relief granted was sufficiently protective. In particular, in denying the claim for agency action unlawfully withheld or unreasonably delayed, the Court noted that this claim was "likely unnecessarily duplicative" of other claims given that the court otherwise ruled that Defendants had violated the APA. Mem. and Order at 14 (Dkt. No. 31). It also warned that Defendants "may expose themselves" to a future 706(1) claim if they continue failing to lawfully award the funds. *Id.* at 14 n.1. And the Court denied Plaintiffs' request for an injunction only because it was at this point too "speculative" to predict that HUD might attempt to reimpose the same criteria "notwithstanding the Court's finding that [those criteria] are unlawful." *Id.* at 17. At bottom, the Court ruled the NOFO, its criteria, and its seven-day application period unlawful and warned HUD it could face further liability if it fails to lawfully award the funds. *See id.* at 14–15 & n.1. This "excellent result[]" shows that the full amount of time expended "was reasonable in relation to the success achieved." *See Hensley*, 461 at 435–36.

## I. An hourly rate of $258.63 is reasonable

EAJA provides that attorneys' fee awards must "be based upon prevailing market rates for the kind and quality of the services furnished," but sets a statutory cap of "$125 per hour unless the court determines that" a higher fee is justified based on "an increase in the cost of living" or "a special factor." 28 U.S.C. § 2412(d)(2)(A). There is little doubt that the prevailing market rates for attorney services in this District are not lower than $125 per hour, such that the

statutory maximum should apply. *See Diggett v. Berryhill*, 292 F. Supp. 3d 581, 584 (D.R.I. 2017) (finding it "more than reasonable" to award statutory maximum with a cost-of-living adjustment).

There is also little doubt that it is appropriate to apply a cost-of-living increase to the $125 statutory maximum. The First Circuit has endorsed relying on the Consumer Price Index (CPI) data compiled by the U.S. Bureau of Labor Statistics to calculate a cost-of-living adjustment. *Castaneda-Castillo*, 723 F.3d at 76; *see also Maricelys S. v. Saul*, No. CV 18-479, 2020 WL 2063938, at *2 (D.R.I. Apr. 29, 2020) (applying cost-of-living adjustment based on CPI data and adopting $206.57 rate for work performed in 2019). To calculate the applicable rate using the CPI method, the First Circuit divides the Consumer Price Index for All Urban Consumers (CPI-U) in the applicable region at the time the work was performed by the CPI-U in March 1996, when the $125 statutory cap was adopted. *Castaneda-Castillo*, 723 F.3d at 76. The CPI-U for the Northeast region was 337.880 in December 2025.[3] To "arrive at the EAJA's statutory cap for each of the relevant years, adjusted for inflation," the Court can divide that number "by 163.3 and multiply the results by $125." *Id.* Applying that formula, the appropriate adjusted rate is $258.63 per hour.

The declarations accompanying the motion reflect the hours of each attorney multiplied by this maximum allowable rate, producing the "lodestar" sought by Plaintiffs. Bateman Decl. ¶ 11; *see also id.*, Exs. B–D; Romero Decl., Ex. A; Fasanelli Decl., Ex. A; Labinger Decl., Ex. A. The Declarations of Amy Romero and Lynette Labinger each attest that the maximum allowable rate under EAJA is substantially below the rates most customarily charged by attorneys

[3] This data is available on the Bureau of Labor Statistics' website. *Consumer Price Index for All Urban Consumers (CPI-U) 2016-2026*, U.S. Bureau of Labor Statistics, https://perma.cc/2BMH-WJBT (last visited Sep. 22, 2026).

with similar experience in the Rhode Island community for work on civil litigation of similar complexity to the matter at bar. Romero Decl. ¶ 9; Labinger Decl. ¶ 8. Thus, the amount sought includes a substantial discount compared to customary rates in the community. Given that substantial discount, Plaintiffs respectfully submit that no further reductions in the total amount sought are warranted here.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and award Plaintiffs attorneys' fees under the Equal Access to Justice Act.

September 25, 2026

Respectfully submitted,

*/s/ Kristin Bateman*
Kristin Bateman (D.C. No. 90037068)^
Yenisey Rodriguez (D.C Bar No. 1600574)^
Kristen Miller (D.C. Bar No. 229627)^
Robin F. Thurston (D.C. Bar No. 1531399)^
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
kbateman@democracyforward.org
yenisey.rodriguez@democracyforward.org
consultantkmiller@democracyforward.org
rthurston@democracyforward.org

Amy R. Romero (RI Bar # 8262)
Kevin Love Hubbard (MA Bar #704772)^
Lawyers' Committee for Rhode Island
56 Pine Street, Suite 200
Providence, RI 02903
(401) 238-3953
Amy@lawyerscommitteeri.org
Kevin@lawyerscommitteeri.org

Antonia K. Fasanelli (DC Bar No. 481856)^
National Homelessness Law Center
1400 16th Street, NW, Suite 425
Washington, DC 20036
(202) 638-2535

afasanelli@homelesslaw.org

Lynette Labinger (RI Bar No. 1645)
128 Dorrance St., Box 710
Providence, RI 02903
(401) 465-9565
ll@labingerlaw.com
Cooperating counsel, ACLU Foundation of RI

*Counsel for Plaintiffs*

^ Admitted *pro hac vice*